## JOSEPH A. TURENNE v. HOMER SMITH.[1]

April 16, 1943.

No. 33,413.

[1] Reported in 9 N. W. (2d) 409.

*Abbott, MacPherran, Dancer & Montague,* for appellant.

*J. J. Hadler,* for respondent.

Loring, Justice.

After verdict for plaintiff in a suit by the special administrator of the estate of Wilfred Turenne, the case comes here on appeal from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial or for a reduction of the verdict by reason of the negligence of the father's servant, the father being one of the beneficiaries of the recovery.

Joseph Turenne, father of Wilfred, collected garbage from various establishments in International Falls and in connection with that business used a dump truck. Wilfred had been in ill health and did not commence his schooling until he was eight years old, so his father had taken him with him on the truck on his trips about the city, and for about three years prior to his death, which occurred on March 20, 1941, Wilfred had assisted with the work of collecting garbage. For about five years prior to this occurrence defendant had been in Joseph's employ and had usually driven the truck. Sometimes defendant was accompanied by Joseph and sometimes by both Joseph and Wilfred, as he was on the day when Wilfred was killed. The accident occurred in a 16-foot alley back of the Echo Inn in International Falls. The weather was still cold, and the alley, like the streets, was covered with ice. The road through the alley had been kept open by the use of a snowplow, which left a roadway just wide enough for the truck, with snow piled in sloping, slippery ridges on each side. Joseph had left the truck at a previous stop in order to repair a garbage box. After the stop behind the Echo Inn, defendant returned to the cab of the truck and resumed his position on the left side as driver, and Wilfred went to the right side of the truck and stood

on the short running board or step behind the right front fender. He was wearing mittens that day and no doubt held on by the "streamlined" door handle and the short projecting hinge of the right-hand door of the truck cab. These were the only handholds available. The step or running board was made of steel without any rubber covering. Wilfred had been forbidden to ride on this step, and defendant had been forbidden by Joseph to carry Wilfred anywhere except in the cab, although sometimes when the father had accompanied defendant Wilfred had ridden in the truck body proper. The door of the cab bulged out four inches over the step or running board. When Wilfred got on the step, he said to defendant, "O. K." and defendant started the truck, paying no further attention to Wilfred until he had gone about 30 feet, when he heard a "holler," stopped the truck, and went back to find Wilfred badly injured, obviously from having been run over by the double rear wheels. As a consequence of these injuries Wilfred died.

This action was brought upon the theory that it was negligent for defendant to move the truck while Wilfred was standing on the outside step; that Wilfred, on account of his immaturity (he was 14 years of age but only in the fourth grade in school); was not guilty of contributory negligence or the lack of care which could be expected from a boy of his age and experience; and that, even if he was negligent in standing on the step, defendant was guilty of that type of negligence called "wilful" or "wanton," which in this state is defined as "a reckless disregard of the safety of the person or property of another by failing, after discovering the peril, to exercise ordinary care to prevent the impending injury." Hinkle v. Minneapolis, A. & C. R. Ry. Co. 162 Minn. 112, 113, 202 N. W. 340, 341, 41 A. L. R. 1377.

It is the contention of defendant that Wilfred was guilty of contributory negligence as a matter of law and that the situation was not appropriate for the application of the so-called "wilful injury" doctrine. It is his further contention that, since defendant was Joseph's employe, for whose negligence Joseph was liable

to third persons, the court should have ordered a reduction or apportionment of the verdict. These are the principal questions presented by this appeal.

■ Defendant earnestly contends that as a matter of law Wilfred was guilty of contributory negligence. A child is bound to exercise such care, judgment, and discretion as might reasonably be expected from one of his age, experience, and mental capacity. McCarthy v. City of St. Paul, 201 Minn. 276, 276 N. W. 1, and cases cited. We think that under the circumstances of this case the jury might well have found, but was not bound to find, that at his age and with his experience Wilfred should have realized that the position which he took upon the step of the truck was perilous, and especially, under the icy condition of the sloping bank left by the snowplow, that he was exposed to an unusual hazard in occupying the place which he did. He had ridden a few times in this position before when his father was absent and had done so in safety. We think it was a question for the jury whether, in the special circumstances prevailing on that day, he realized the extent of his peril and whether or not he exercised the care to be expected of a child of his age, mental capacity, and experience.

■ Defendant was 23 years of age, with five years' experience in driving a truck for his employer. On this record the jury was justified in finding that after Wilfred had mounted the step and was standing outside the cab defendant knew that Wilfred was then in a position of peril and that, under the icy and slippery conditions of the road and adjoining slope, he was in an especially hazardous position. Whether under those circumstances defendant exercised ordinary care by moving the truck without insisting that Wilfred either get into the cab or off the step was a question of fact properly submitted to the jury. The rule in this state is that when a person is discovered in a position of peril, notwithstanding his negligence in so placing himself, it is the duty of one having control of the situation to exercise ordinary care not to do anything that activates the impending danger or puts in motion

the instrumentality from which the peril impends. As more clearly stated by Mr. Justice Mitchell in Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 451, 74 N. W. 166, 170, 70 A. S. R. 341:

"It is sometimes said that the plaintiff may be entitled to recover if the defendant might, by the exercise of care, have avoided the consequences of the plaintiff's negligence. But this doctrine is only applicable to cases in which the plaintiff's negligence preceded that of the defendant. But when the negligence of the two persons is contemporaneous, and the fault of each operates directly to cause the injury, neither can recover from the other. Bigelow, Torts, 311.

"The true question in all cases is whether there was negligence on part of the plaintiff contributing directly as a proximate cause to the injury. If there was, he cannot recover. Where the defendant's acts are wilful and intentional, the negligence of the plaintiff, if any, is no longer deemed in law a proximate cause of the injury. In such cases the wilful and intentional acts of the defendant are deemed the sole proximate cause, and the negligence of the plaintiff only the remote cause, or, more properly speaking, the mere occasion, of the injury. *The same is true where, after discovery of plaintiff's negligence in time to avoid injury to him, the defendant neglects to exercise due care to do so.* Some confusion of ideas has arisen from the fact that courts, especially in the older decisions, have frequently used the word 'gross' as if synonymous with 'wilful' and 'wanton,' thereby conveying the impression that a plaintiff may recover, notwithstanding his own contributory negligence, provided the negligence of the defendant was gross. This would be to adopt the doctrine of comparative negligence which has never been recognized by this court." (Italics supplied.)

Although neither malice, actual intent to injure another, nor negligence of grosser degree than lack of ordinary care is a necessary element in the tortious act, this has frequently been miscalled "the wilful and wanton negligence rule." The trial court,

in the case at bar, wisely refrained from so terming it in its charge.

■ Defendant contends that under the rule announced in Hinkle v. Minneapolis, A. & C. R. Ry. Co. 162 Minn. 112, 202 N. W. 340, 41 A. L. R. 1377, the "discovered peril" theory should not have been submitted to the jury, because, he asserts, Wilfred was guilty of the same type of negligence as defendant. No instruction was requested on the theory of this contention, and none could well have been given. The act of Wilfred upon which defendant charges negligence preceded defendant's action in starting the car; hence the rule quoted from the Fonda case, 71 Minn. 438, 74 N. W. 166, 70 A. S. R. 341, applied.

■ It is further contended by defendant that the charge of the court did not leave to the jury the question of whether Wilfred's position on the running board on that occasion was a position of peril. We think the charge, fairly construed, submitted that question to the jury. Repeatedly, the court charged the jury that they could not find for plaintiff if they found that Wilfred was guilty of "contributory negligence" unless defendant discovered that the boy was in a position of peril. The evidence was conclusive enough that defendant knew where the boy was, so these instructions clearly submitted the question whether that position was one of peril.

■ Defendant contends that the $7,628 verdict is, of itself, so excessive as to indicate passion or prejudice on the part of the jury. Wilfred was a very useful boy. He was of great assistance to his father and family.

Both sides cite Ekdahl v. Minnesota Utilities Co. 203 Minn. 374, 281 N. W. 517, where a $7,500 verdict for the death of a 15-year-old boy was reduced at the trial to $6,250, and sustained at the latter figure by this court. That case is not authority for the reduction of the verdict in the case at bar. Nothing is said that would indicate that this court would have reduced the $7,500 verdict had it met with the approval of the trial court. Many cases are cited in the Ekdahl case from other jurisdictions where very

much larger verdicts for the death of children have been sustained. In the case at bar, we do not think a verdict of $7,628 compels an inference that the jury were actuated by passion or prejudice. As well said by the trial court: "The normal expectancies of the boy and his parents were long enough so that I am not prepared to say, as a matter of law, that the parents' net pecuniary interest in his continuing to live was of less present value than $7,500." (The special damages were assessed at $128.) Again he said, speaking of the parents: "their financial condition and the size of their family would seem to increase the likelihood of their becoming dependent upon him before or after he reached maturity, in whole or in part." We can sustain the verdict under the rule laid down in Noe v. G. N. Ry. Co. 168 Minn. 259, 262, 209 N. W. 905.

■ Defendant, relying on Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35, contends that there should be a reduction or apportionment of the verdict for the reason that liability is based on the negligence of an employe of the father, who is one of the beneficiaries of the verdict. We do not regard the Anderson case as authority for defendant's position here. In that case, Carl A. Anderson was the administrator of his deceased mother's estate and sought to recover for her death in an action against Anton L. Anderson and his wife, Tresse Anderson, for the benefit of the next of kin except Anton L. Anderson, who was specifically excepted from those for whose benefit the action was brought. It appeared that, while Tresse was driving the car at the time it went out of control, Anton participated in the endeavor to recover the management of it before it finally upset. The claim set up for defendant was that because Anton was next of kin and one of the beneficiaries no recovery could be had because he was "a negligent cause" of the accident. The case seems to have been disposed of on the ground that no recovery was sought for Anton's benefit. The accident occurred in 1930 in South Dakota, which has a death statute similar to ours. It is not clear from the opinion in the Anderson case whether Tresse's negligence in the management of the car was chargeable to Anton by reason of agency

or otherwise, and it does not appear that, at that time at least, South Dakota had an owner's responsibility statute, nor does it appear from the opinion who was the owner of the car.

Counsel with commendable frankness confess that they have found no case in the United States or elsewhere which is directly in point on the situation here presented.

Wilfred's father was liable to third parties for the negligence of defendant in the course of his employment; but it is equally true that defendant, as employe, was liable to his employer for damages either to his master or to anyone who had recourse to the master because of defendant's negligence. Magistad v. Schoch, 177 Minn. 453, 225 N. W. 287. In the case at bar, Wilfred, if he had survived, could have brought suit, through a guardian *ad litem*, directly against defendant, although as an unemancipated minor he might not have sued defendant's employer, who was his father. In such an action it would have been no defense that defendant's employer was plaintiff's father. The servant is primarily liable to the victim of his negligence, and it is no defense that his employer may also be responsible to the victim for the identical act which gives rise to the cause of action against the servant.

In the case at bar there is no question about the right of Wilfred's estate to pursue its remedies against defendant, who is primarily liable for any negligent act he had committed. The situation is the reverse of the often suggested one where a beneficiary under the death statute is primarily liable for his own negligence. Here there should be no reduction or apportionment of the verdict.

■ Careful examination of the record with reference to alleged misconduct of counsel reveals no prejudicial error.

■ The controversy over the time of admission of a statement signed by Wilfred's father is not of enough importance to require comment.

The carefully prepared memorandum of the trial court deserves the commendation of this court.

Order affirmed.