Mark A. SCHNEIDER, Respondent,

v.

Harold BUCKMAN, individually and d/b/a Buckman-Schierts Ambulance Service, Appellant,

Pam Buckman, Respondent.

No. C5-87-3.

Court of Appeals of Minnesota.

Sept. 29, 1987.

Review Granted Dec. 18, 1987.

Kenneth R. Moen, Dunlap, Keith, Finseth, Berndt, & Sandberg, Rochester, for Mark A. Schneider.

Robert C. Bell, Peterson, Bell, Converse & Jensen, St. Paul, for Harold Buckman individually and d/b/a Buckman-Schierts Ambulance Service.

Frederic N. Brown, Thomas P. Kelly, Brown & Bins, Rochester, for Pam Buckman.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and MULALLY, JJ.*

## OPINION

NIERENGARTEN, Judge.

Harold Buckman appeals from a judgment holding him responsible for all of Mark Schneider's damages, including those caused by the negligence of respondent Pam Laska (formerly Buckman).

Affirmed in part, reversed in part.

## FACTS

On May 9, 1976, Mark Schneider was hang-gliding and fell about 250 feet. He sustained two broken ankles and fractured his spine. Schneider was transferred on a backboard by the Buckman-Schierts ambulance from the scene to St. Elizabeth's Hospital in Wabasha.

Upon arrival in the emergency room, a doctor determined Schneider's injuries were serious enough to require specialized care at the Mayo Clinic in Rochester. The next day, Buckman and his daughter, Pam Laska, arrived to transport Schneider. Pri-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

or to transfer Schneider had good color and sensation of touch in his feet.

The doctor's sole instructions for transporting Schneider were to transport the patient lying flat. Buckman was aware that Schneider had a back injury, but had no real information as to the seriousness or extent of the injuries. At trial Buckman conceded he could have asked for additional instructions.

Buckman testified that in the absence of a doctor's order to move the patient with a backboard, he determined that a five-person lift using a draw sheet was the best method to move the patient. It was during this transfer that Schneider testified he heard a "pop" and felt immediate discomfort in his lower extremities, involving a painful burning sensation and then a loss of sensation.

Schneider was transported to St. Mary's Hospital. Upon arrival, the doctors confirmed a neurological loss and Schneider eventually underwent several surgeries to his back and ankles. As a result of the accident, and possibly transfer, Schneider has been left with disabilities which affect his balance, stamina, walking ability and ability to carry on his occupation as a farmer.

On March 22, 1982, Buckman was personally served with two copies of a summons and complaint at his residence, naming himself, his ambulance service and his daughter as defendants. Schneider intended the second copy for Laska. Buckman testified he assumed that one copy was for him and the second for his attorney because his daughter, Pam Laska had not been living at her father's home since 1974.

Buckman consulted an attorney who informed him that Laska had been improperly served and that Laska need do nothing unless she were personally served or a copy left at her usual abode. Buckman passed this information on to Laska. Without Laska's knowledge, Buckman's attorney contacted Schneider's attorney requesting an extension of time in which to answer, purporting to act on behalf of "all of the defendants." A second and third letter were also sent by Buckman's attorney.

Laska claims no knowledge of any of these letters.

On May 9 or 10, 1982, the statute of limitations expired on Schneider's negligence cause of action. After learning that Laska intended to assert a defense of improper service and would raise the statute of limitations, Schneider's attorney personally served Laska. Laska's motion to dismiss was denied.

In January 1986 Buckman and Schneider entered into a "Covenant Not to Levy Execution on Judgment and Indemnity Agreement." The case was tried in April 1986 and submitted to the jury on a special verdict form. The jury found both Buckman and Laska negligent and apportioned negligence as follows:

| | |
|---|---|
| Buckman | 35% |
| Laska | 25% |
| Emergency Room Doctor | 20% |
| St. Elizabeth's Hospital | 20% |

The jury found the negligence to be the direct cause of Schneider's injuries and awarded $125,000 in damages.

The court issued amended findings and ordered the complaint against Laska dismissed, denied Buckman's JNOV motion and awarded Schneider the sum of $100,000 against Buckman.

## ISSUES

1. Did the trial court err in denying Laska's motion to dismiss for improper service and then the running of the statute of limitations?

2. Was there adequate expert testimony to determine negligence on the part of Laska and Buckman?

3. Is Laska entitled to indemnity from Buckman?

4. Did Schneider agree to indemnify Buckman for any liability attributable to Buckman by way of indemnity or contribution?

## ANALYSIS

### I

■ The attempted service on Laska in March was improper. Service on an individual requires

delivering a copy to him personally or by leaving *a copy at his usual place of abode with some person of suitable age and discretion* * * *.

Minn.R.Civ.P. 4.03(a) (emphasis added). Service of two copies of the complaint to Buckman was not service on Laska, who had not lived at Buckman's home for more than nine years. In denying Laska's motion, the trial court relied on equitable estoppel and agency by estoppel. *See Albachten v. Bradley*, 212 Minn. 359, 362–63, 3 N.W.2d 783, 785 (1942). However, in *Albachten* the defendant deliberately and directly encouraged the plaintiff to refrain from acting until the statute of limitations had run, whereas here Laska did nothing. In order to invoke estoppel, the trial court found that Buckman's attorney was Laska's agent. But the total extent of Laska's contact with the attorney was to rely on information from the attorney, relayed by Buckman, that Laska need do nothing until properly served. Laska was even unaware of the attorney's letters purporting to represent "all defendants."

▋ Apparent authority is usually based on an affirmative act of the principal. *Vacura v. Haar's Equipment, Inc.*, 364 N.W.2d 387 (Minn.1985). It includes the following elements: a manifestation by the principal that another is his agent; the person who deals with the supposed agent must know of these manifestations at the time of dealing; the manifestation of apparent authority must be by the principal's actions, not the agent's. *See Restatement (Second) of Agency* § 8 (1958); *Truck Crane Service Co. v. Barr-Nelson, Inc.*, 329 N.W.2d 824, 826 (Minn.1983); *Hockemeyer v. Pooler*, 268 Minn. 551, 562, 130 N.W.2d 367, 375 (1964). Laska took no action, so agency cannot be found on the theory of apparent authority.

▋ While there may be a presumption that an attorney has authority to act for clients the attorney professes to represent, *Goodman v. Ancient Order of United Workmen*, 211 Minn. 181, 184, 300 N.W. 624, 626 (1941), there is also a principle of agency law requiring one dealing with an agent to inquire as to the agent's authority.

*West Concord Conservation Club, Inc. v. Chilson*, 306 N.W.2d 893, 896 (Minn.1981). There was no such inquiry here. In fact, there are possible conflicts of interest between Buckman and Laska, which should have put an attorney on notice to inquire as to representation. Laska was improperly served and should have been dismissed.

## II

Schneider alleges that Buckman, Laska, and others not parties to the suit, were negligent in transferring him from a hospital bed to an ambulance cart, thereby causing his injuries. The parties do not dispute that ambulance personnel are medical personnel for the purpose of determining the proper standard of care. We note next that:

> To establish a prima facie case of negligent care and treatment against [medical personnel], plaintiffs were *required to introduce expert testimony demonstrating* (1) the standard of care *recognized by the medical community as applicable to the particular defendant's conduct*, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of [plaintiff's] injuries.

*Plutshack v. University of Minnesota Hospitals*, 316 N.W.2d 1, 5 (Minn.1982) (citing *Smith v. Knowles*, 281 N.W.2d 653, 655 (Minn.1979)) (emphasis added).

▋ Schneider's claim is that Buckman should have used a backboard rather than another method for transfer. Transfers of severely injured persons are not within the common knowledge and experience of the average lay person. Therefore, expert testimony was required to establish the standard of care of the medical community for patient transfers by ambulance personnel. *See Todd v. Eitel Hospital*, 306 Minn. 254, 260–61, 237 N.W.2d 357, 361 (1975).

Dr. Ketroser, a neurologist, testified unequivocally that, given the nature of Schneider's injuries, the only appropriate method to transfer him was via backboard. John Nihart, an emergency medical services consultant for the Minnesota Depart-

ment of Health, testified that Buckman followed the correct procedures. A fact issue was therefore created, and, as expert testimony is meant to be advisory to the jury, the jury was free to adopt the conclusions of either expert. *Fleahman v. Lehman*, 388 N.W.2d 417, 420–21 (Minn.Ct. App.1986), *pet. for rev. denied* (Minn. Aug. 20, 1986). They chose Dr. Ketroser.

### III

■ The trial court found at the time of the injury, Laska was an employee of Buckman, acting within the scope of such employment and under the direction and control of Buckman so as to render him liable for any acts of Laska which caused or contributed to Schneider's injuries. Buckman now argues that Laska is not entitled to indemnity because of her own negligence.

■ Although Buckman made no request for findings at trial to indicate Laska's negligent conduct and did not argue it to the jury, but in fact admitted Laska was under his direction and control, we can review this matter of indemnity because the issue was raised tangentially at trial when Laska moved for a directed verdict. At that time, the court indicated the appropriate standard of care would be the same for both Buckman and Laska.

Buckman made the decision on how to transfer Schneider. The manner of transfer was not so "manifestly wrong" as to require Laska to refuse to comply with her employer's direction. Therefore, although the jury attributed 25 percent of the fault to Laska, she is entitled to indemnification. *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362, 366 (Minn.1977).

### IV

■ Prior to trial, Buckman and Schneider entered into a "Covenant Not to Levy Execution on Judgment and Indemnity Agreement." Buckman has an insurance policy from Great Central Insurance for $25,000 and one from Milwaukee Mutual Insurance Company for $100,000. Under the agreement, $25,000 would be provided by Great Central and Schneider would agree not to collect any judgment in excess of the $100,000 Milwaukee policy.

However, one clause in the agreement states:

Covenantor further agrees that he shall indemnify and hold harmless Covenantee and Great Central Insurance Company, their personal representatives, successors, and assigns from any expense, loss, or damage incurred as a result of claims for indemnity or contribution arising out of the above-mentioned litigation and will *specifically credit and satisfy that portion of the total damages awarded against the Covenantee which any nonsettling party would be entitled to recover from Covenantee by way of contribution or indemnity.*

(emphasis added). This language is common in *Pierringer* releases wherein the plaintiff settles with one defendant and frees him or herself of any claims by way of contribution or indemnity without releasing the remaining tortfeasors. Buckman argues that the clause limits Schneider to recovering only the portion of the judgment directly attributable to Buckman.

Schneider argues that this was not a true *Pierringer* release but merely a contract of sorts between the parties which allows him to recover the entire amount from Buckman. The clause is not ambiguous. It was drafted by Schneider and he is bound by its provisions. All other liability attaches by way of contribution or indemnity and the contract's language indemnifies Buckman for this kind of liability. Therefore, Buckman is liable only for 35 percent of the $125,000 jury award, or $43,750. He has already paid $25,000 and his remaining liability is for $18,750.

### DECISION

Service on Laska was improper and she should not have been a party to the suit. The evidence supports the jury's finding of negligence on the part of Buckman. The agreement between Buckman and Schneider provides that Schneider will indemnify Buckman for liability resulting from contribution or indemnification. Buckman is

therefore responsible only for 35 percent of the judgment assigned by the jury to his negligence.

Affirmed in part, reversed in part.