Mark A. SCHNEIDER,
Petitioner, Appellant,

v.

Harold BUCKMAN, individually and d/b/a Buckman–Schierts Ambulance Service, Respondent,

Pam Buckman, Respondent.

No. C5–87–3.

Supreme Court of Minnesota.

Dec. 23, 1988.

---

Kenneth R. Moen, Rochester, for appellant.

Robert C. Bell, St. Paul, for Harold Buckman.

Frederic N. Brown and Thomas P. Kelly, Brown & Bins, Rochester, for Pam Buckman.

## OPINION

WAHL, Justice.

Mark Schneider brought a negligence action against Harold Buckman, owner and operator of Buckman–Schierts Ambulance Service, and Pam Laska (formerly Pam Buckman, hereinafter Laska), his daughter and employee, for injuries sustained while being transferred from a hospital bed to an ambulance cart in 1976. The jury returned a special verdict apportioning 35% negligence to Buckman, 25% to his daughter Laska, and 40% to two other tortfeasors who were not parties to the lawsuit, and awarding $125,000 in damages. The district court then granted Laska's motion for dismissal under the doctrine of respondeat superior, and held Buckman liable for 100% of the damages. On appeal, the court of appeals limited Buckman's liability to the 35% assigned to him by the jury. *Schneider v. Buckman*, 412 N.W.2d 787 (Minn. App.1987.). We reverse and reinstate the judgment of the district court.

I

Mark Schneider was injured in a hang-gliding accident on May 9, 1976 and taken to St. Elizabeth's Hospital in Wabasha, Minnesota. He was diagnosed as having a broken back, ankle fractures and a possible heel fracture. He had movement and sensation in his feet and toes both at the time of admission and throughout the following night. Dr. Joseph McGrath, the attending physician, determined, after consultation with an orthopedist at Mayo Clinic, that Schneider should be transferred to Rochester for care by orthopedic surgeons. On May 10, 1976, the Buckman–Schierts Ambulance Service transported Schneider from St. Elizabeth's Hospital to St. Mary's Hospital in Rochester.

Harold Buckman, owner and operator of the ambulance service, his employee Laska,[1] and other hospital personnel transferred Schneider from his hospital bed to the ambulance cart by using the draw sheet from his hospital bed mattress to lift and slide him onto the cart. During the transfer, Schneider felt a "snapping" in his back followed by paralysis and a painful burning

---

1. Laska was also an RN employed by St. Elizabeth's Hospital on its night shift. Although she was on duty the night of Schneider's stay, she had no special recollection of his treatment or back injury.

sensation. Upon Schneider's arrival at St. Mary's, Dr. Miguel Cabanela confirmed that he could not move his ankles and had lost feeling below the knees. Schneider underwent several surgeries on his back and legs over the next two years. At the time of the trial he was able to walk but continued to experience occasional pain in his back and significant pain in his left ankle, diminished stamina, and residual bowel and bladder problems. Schneider sued Buckman and Laska for negligence, alleging that, as a consequence of the transfer made from hospital bed to ambulance cart without a backboard, he sustained further injuries to his spinal cord.

Before trial Schneider and Buckman entered a written agreement whereby Schneider accepted the $25,000 limits of an insurance policy Buckman held with Great Central Insurance Company, reserved his full and complete rights to pursue the pending litigation against all defendants, including Buckman, and reserved his right to satisfy any judgment obtained by proceeding against Milwaukee Mutual Insurance Company, with whom Buckman held a second policy of insurance. Schneider agreed, however, not to levy executions or pursue legal remedies against Buckman on any judgment obtained other than might be covered by Buckman's Milwaukee Mutual policy. Schneider also agreed to indemnify Great Central Insurance Company and Buckman for damages any non-settling party would be entitled to recover against Buckman by way of contribution or indemnity.

The jury at trial found that Schneider suffered damages of $125,000 for injuries which occurred while he was being transferred from the hospital bed to the ambulance cart. The jury attributed negligence causing the injuries: 35% to Buckman, 25% to Laska, 20% to Dr. Joseph McGrath and 20% to St. Elizabeth's Hospital. Although the case was submitted to the jury on a special verdict which included questions concerning the conduct of Dr. McGrath and St. Elizabeth's Hospital, neither the doctor nor the hospital was a party to the lawsuit.[2]

The district court dismissed Laska from the suit, determining that as an employee of Buckman she was acting within the scope of her employment and so under Buckman's direction and control as to render him liable for any of her acts which contributed to Schneider's injuries. The court then credited the $25,000 already received by Schneider, noted the agreed-upon limitations on recovery to Buckman's available insurance coverage, and awarded judgment against Buckman for $100,000. The total amount of the judgment is available to Schneider from Buckman's Milwaukee Mutual policy.

Although the court of appeals agreed that Laska was acting within the scope of her employment, it determined that she was entitled to indemnification from Buckman. The court of appeals reasoned, however, that, under the pre-trial agreement with Schneider, Buckman was released from any liability which would attach by way of contribution or indemnity. The court of appeals held further that Laska had been improperly served and should not have been a party to the lawsuit.[3] Having ruled that Schneider could not recover any part of the verdict from Laska and that Buckman was released from liability for Laska's negligence, the court of appeals limited recovery against Buckman to 35% of the verdict. This court granted review.

The only issues we will address on appeal are: whether Buckman is liable for both his negligence and his employee's negligence under the doctrine of respondeat superior; and whether Buckman is liable for 100% of the damages under Minn.Stat. § 604.02, subd. 2 (reallocation statute).

2. Under Minn.Stat. § 541.07 (1986), actions against physicians and hospitals are held to a two-year statute of limitations. Thus, Schneider's action against McGrath and St. Elizabeth's was barred at the time he brought suit in 1982.

3. Buckman was served with both his and Laska's copies of the summons and complaint on March 22, 1982. Laska had not lived at her parents' home since 1974. She was not personally served until June 10, 1982, several weeks after the statute of limitations had run on Schneider's action against her.

## II

■ The first issue is whether Buckman is liable for both his negligence and his employee's negligence under the doctrine of respondeat superior. The district court found, and the court of appeals affirmed, that at the time of Schneider's injury Laska was an employee of Buckman's, acting within the scope of her employment and under his direction and control.

This court has adopted the well established principle that an employer is vicariously liable for the torts of an employee committed within the course and scope of employment. *Ismil v. L.H. Sowles Company*, 295 Minn. 120, 123, 203 N.W.2d 354, 357 (1972). In Minnesota, we characterize the liability of master and servant as joint and several liability. *Kisch v. Skow*, 305 Minn. 328, 332, 233 N.W.2d 732, 734 (1975). Further, where there is joint and several liability, a plaintiff may sue one, all, or any number of joint tortfeasors and may proceed in separate actions or one action. *Id.* Although Buckman argues that Laska's negligence was "independent," he presented no evidence that this was so and appears not to dispute that her actions were within the scope of her employment and not intentional torts. As Laska's employer, Buck-

man is vicariously liable for Laska'a negligence whether or not she is a party to the lawsuit or was properly dismissed, unless, as he argues, his agreement with Schneider relieves him of liability for her negligence.[4] We find that it does not.

The covenant between Schneider and Buckman includes an agreement that Schneider would hold Buckman and Great Central, his settling insurer, harmless from claims of indemnity or contribution arising out of the litigation. Having dismissed Laska from the lawsuit for lack of personal jurisdiction, the court of appeals took the position that she had a "theoretical" right of indemnity from Buckman which triggered Schneider's obligation to credit the amount of indemnity against the damages award. That conclusion, however, misconceives the import of the jury's apportionment of fault and the operation of the doctrine of respondeat superior. The jury found that Buckman was negligent and that his negligence was a proximate cause of Schneider's injury, and they also found Laska negligent and her negligence a proximate cause of Schneider's injury. Under the doctrine of respondeat superior, Buckman's responsibility for Laska's negligence depends not on whether she was a party to

**4.** Buckman also asserts that the agreement incorporates the basic elements of a *Pierringer* release and, as such, clearly limits his liability to only that percentage of fault attributed to him up to his insurance limit of $100,000. In *Frey v. Snelgrove*, 269 N.W.2d 918, 921–22 (Minn.1978), this court stated the basic elements of a *Pierringer* release require:

(1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence;

(2) The reservation of the remainder of plaintiff's causes of action against the non-settling defendants; and

(3) Plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the non-settling parties and to satisfy any judgment obtained from the non-settling defendants to the extent the settling defendants have been released.

The court also referred to Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1, 3, 8, notes 32 and 33 (1977).

The effect of a *Pierringer* release is to limit each joint tortfeasor to liability only for that

part of the award which is his percentage of causal negligence. *Id.* at 922. In the present case the agreement clearly limits Buckman's liability to the amount contained in Milwaukee Mutual Insurance Company Policy No. 952728 by providing:

Covenantor further agrees that neither he nor anyone on his behalf shall seek to proceed further to levy or sue out any execution * * * against Covenantee * * * on any such judgment or verdict other than may be covered by an insurance policy issued by Milwaukee Mutual Insurance Company, being policy number 952728.

However, unlike the typical *Pierringer*, the agreement contains no language releasing Buckman from suit. In fact, Schneider specifically retains all litigation rights against all defendants. The agreement states:

It is expressly understood that Covenantor reserves for himself full and complete rights to pursue the pending litigation against all defendants named therein, *including the Covenantee*. (emphasis added). It does appear, however, that Buckman's liability would be "capped" at his insurance policy limits.

the lawsuit; his vicarious liability arises out of the employment relationship and the fact that Laska was acting within the scope and course of that employment. That Buckman is liable to Schneider not only for his own fault but also that of his employee does not, however, relieve the employee of liability. Had Laska been a party to the action she would have been primarily liable to the victim for her own negligence; her employer's responsibility to the victim for the act which gives rise to the cause of action against the employee would not have afforded Laska a defense. *Turenne v. Smith*, 215 Minn. 64, 72, 9 N.W.2d 409, 412–13 (1943). Moreover, it is equally well settled that an employer is entitled to recover from the employee damages which the employer was compelled to pay because of the employee's negligence. *Lunderberg v. Bierman*, 241 Minn. 349, 63 N.W.2d 355 (1954). Accordingly, had Laska been a party to the action and, therefore, liable to Schneider, there appears to be no basis for indemnification from her employer. Since Laska has neither an actual nor a theoretical right of indemnity from Buckman, the hold harmless provision of the agreement between Schneider and Buckman does not reduce the amount of damages recoverable from Buckman. We hold that Buckman is liable for the 25% of negligence attributed to his employee, Laska, under the doctrine of respondeat superior.

### III

The parties assume that the answer to the question of whether Buckman is liable for 100% of the damages is found in Minn. Stat. § 604.02, subd. 2, the reallocation statute which provides:

> Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution and to any

continuing liability to the claimant on the judgment.

Minn.Stat. § 604.02, subd. 2 (1986).

Here, the trial court found that recovery was not available from two tortfeasors to whom the jury apportioned 40% of the fault in this negligence action. It therefore assigned that portion, together with Laska's percentage of negligence to Buckman and held him liable for 100% of the damages. The court of appeals limited Buckman's liability to the 35% directly attributable to his own negligence and did not address a possible reallocation to Buckman of the remaining obligation. *Schneider v. Buckman*, 412 N.W.2d 787, 792 (Minn.App. 1987).

Schneider's position is that the trial court, by specifically finding that no recovery is available to him from either Dr. McGrath and St. Elizabeth's Hospital, deemed that recovery uncollectible under the statute and that because Laska was dismissed from the action, her share is also uncollectible. He argues that Buckman, as the remaining defendant, is statutorily bound for 100% of the damages. Finally, he contends that the agreement does not insulate Buckman from reallocation because it only limits his liability to that available under his insurance policy and in no way does it release Buckman from joint liability.

On the other hand, Buckman asserts that the procedure for determining uncollectibility, as set out in the statute and approved by this court in *Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289 (Minn.1986) (hereinafter *Hosley I*) was not followed. That is, Schneider never made a motion seeking reallocation and the trial court did not make the requisite determination of uncollectibility. *Id.* at 294. Further, relying upon the court of appeals decision in *Hosley v. Pittsburgh Corning Corp.* (hereinafter *Hosley II*), he argues that there is no legal right to collect until the trial court enters judgment against the other tortfeasors. 401 N.W.2d 136, 139 (Minn.App. 1987). He points out that, in the present case, judgment has been entered against Buckman alone.

It is our view that the reallocation procedures of Minn.Stat. § 604.02, subd. 2, as interpreted in *Hosley I*, are not implicated where, as here, there is but one defendant against whom judgment can be or has been entered. The fact that a jury, in its task of apportioning liability among the various tortfeasors, has determined that Buckman's individual negligence was 35% of the total is of no practical consequence when there are no other defendants against whom judgment can be entered. Here, the physician and hospital were never parties to this action and the negligence of Buckman's employee is attributable to him by operation of the doctrine of respondeat superior.

We hold that the reallocation provision of Minn.Stat. § 604.02, subd. 2 is inapplicable under the facts and circumstances of the present case. We hold further that Buckman is liable for 100% of the damages awarded to Schneider. The decision of the court of appeals is reversed and the judgment of the district court reinstated.

Reversed, judgment of the district court reinstated.

KELLEY, J., took no part in the consideration or decision of this case.

SIMONETT, J., concurs specially.

SIMONETT, Justice (concurring specially).

I join the court's opinion but add a comment. Including the two nonparties (Dr. McGrath and the hospital) on the verdict form for a determination and allocation of their fault was "of no practical consequence," as the court's opinion points out. As for "defendant" Laska, at the time of trial she was thought to be under the trial court's ruling a properly served party, hence the ascertainment of her fault was submitted to the jury. Apparently Laska had no liability insurance of her own or assets. (While the record suggests Laska might have had coverage under the hospital's policy, plaintiff did not plead she was employed by the hospital at the time of her alleged negligence). We are not privy to plaintiff's strategy, but it would seem there was no practical need as this case was tried for Laska to have been a named party. Her negligence (whether or not a party) was included in her employer's actual and vicarious negligence, which was covered by Milwaukee Auto's policy. If this were the situation, the case might have been submitted simply as a lawsuit between plaintiff Schneider and defendant Buckman. Because there was no claim of contributory negligence against plaintiff, it could even have been submitted on a general verdict form.

When a *Pierringer* release is involved, application of the comparative fault statute should include certain nonparties. Assume there are three tortfeasors and plaintiff settles with two of them on *Pierringer* releases. The two settling tortfeasors are nonparties, either because they settled before being sued, or, if they had been sued, they were dismissed from the lawsuit because of the *Pierringer* releases. In this situation the fault of the settling nonparties is submitted to the jury so that the shares of liability of the nonsettling parties can be determined. There can be other practical consequences too. *See, e.g., Payne v. Bilco*, 54 Wis.2d 424, 195 N.W.2d 641 (1972). The more fault the named defendant can shift to the absent tortfeasors, the less the named defendant has to pay. If plaintiff's fault is also at issue, the apportionment of some fault to the nonparties may result in the named party's fault being less than the plaintiff's. Here, however, we do not have a *Pierringer* release. See footnote 4 of the court's opinion.