**Alice Ann STAAB, Respondent (A12–1575), Appellant (A12–1972),**

v.

**DIOCESE OF ST. CLOUD, Appellant (A12–1575), Respondent (A12–1972).**

Nos. A12–1575, A12–1972.

Court of Appeals of Minnesota.

April 29, 2013.

Review Granted June 26, 2013.

H. Morrison Kershner, Pemberton, Sorlie, Rufer & Kershner, PLLP, Fergus Falls, MN; and Kevin S. Carpenter, Kevin S. Carpenter, P.A., St. Cloud, MN (for respondent/appellant).

Dyan Jean Ebert, Laura A. Moehrle, Quinlivan & Hughes, P.A., St. Cloud, MN (for appellant/respondent).

Richard J. Thomas, Bryon G. Ascheman, Corinne Ivanca, Burke & Thomas, PLLP, Arden Hills, MN (for amicus curiae Minnesota Defense Lawyers Association).

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN (for amicus curiae Minnesota Association of Justice).

Considered and decided by WORKE, Presiding Judge; KALITOWSKI, Judge; and SCHELLHAS, Judge.

## OPINION

KALITOWSKI, Judge.

This is the second time this negligence dispute has been before this court. Here, we are presented with the question of how to apply the reallocation provision of Minn. Stat. § 604.02 (2012). Appellant Diocese of St. Cloud (the diocese) challenges the district court's order reallocating the portion of a jury verdict attributing fault to Richard Staab, who was not a party to the litigation. Respondent Alice Staab challenges the district court's decision to award post-verdict interest from the date of the reallocation order rather than the date of the verdict.

## FACTS

In 2005, Alice and Richard Staab attended an event at the Holy Cross Parish School of the diocese. Alice Staab broke her leg and sustained other injuries after falling out of a wheelchair pushed by her husband, Richard Staab. The fall occurred as Richard Staab pushed the wheelchair through a doorway that opened to a five-inch drop.

Alice Staab initiated a personal injury action against the diocese. Alice Staab did not sue Richard Staab, and the diocese did not seek to add him as a third-party defendant. The case was tried to a jury. Although Richard Staab was not a party to the suit, the diocese requested that the special verdict form include him as a potentially at-fault party. The jury found the diocese and Richard Staab each 50% negligent and awarded total damages of $224,200.70.

The district court initially concluded that the diocese was required to pay the entire award because Richard Staab was not a party to the litigation. The diocese appealed, and we reversed. *See Staab v. Diocese of St. Cloud*, 780 N.W.2d 392 (Minn.App.2010) (*Staab I*). The Minnesota Supreme Court granted review and affirmed our decision. *See Staab v. Diocese of St. Cloud*, 813 N.W.2d 68 (Minn.2012) (*Staab II*). The supreme court remanded for entry of judgment consistent with its

conclusion that Minn.Stat. § 604.02, subd. 1, applies when a jury apportions fault between a defendant and a nonparty tortfeasor to limit the amount the defendant must pay to the share of fault assigned to the defendant by the jury. *Id.* at 80.

On remand, the district court granted Alice Staab's motion for reallocation under Minn.Stat. § 604.02, subd. 2, after finding that Richard Staab's share of the obligation was uncollectible. The district court entered a judgment against the diocese for the entire jury award, plus costs and interest, less amounts already paid. The diocese appeals that judgment.

The district court subsequently entered an amended judgment, re-calculating the amount owed in light of amounts already paid by the diocese. It also awarded interest on the judgment from August 7, 2012 (the date of the order granting reallocation), rejecting Alice Staab's proposed date of March 25, 2009 (the date of the jury verdict). Alice Staab appeals the district court's calculation of interest.

## ISSUES

1. Did the district court err by reallocating Richard Staab's portion of the jury verdict to the diocese under Minn.Stat. § 604.02, subd. 2?

2. Did the district court err by awarding post-verdict interest from the date of the order for reallocation rather than the date of the verdict?

## ANALYSIS

### I.

We review issues of statutory construction de novo. *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn.2011). Our goal when interpreting a statute is to ascertain and effectuate legislative intent. *Staab II*, 813 N.W.2d at 72. If a statute is unambiguous, we interpret the text according to its plain language. *Brua v. Minnesota Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn.2010).

Subdivision 1 of the comparative-fault statute enumerates four circumstances that give rise to joint-and-several liability. Minn.Stat. § 604.02, subd. 1; *accord O'Brien v. Dombeck*, 823 N.W.2d 895, 898 (Minn.App.2012). It is undisputed that none of the enumerated circumstances applies here.

Subdivision 2 of the comparative-fault statute provides for the reallocation of uncollectible amounts:

**Reallocation of uncollectible amounts generally.** Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Minn.Stat. § 604.02, subd. 2.

### Joint-and-Several Liability

The diocese argues that reallocation in subdivision 2 does not apply unless joint-and-several liability is found under subdivision 1. We disagree. Between the time the diocese submitted its opening and reply briefs, we published an opinion rejecting that argument. *See O'Brien*, 823 N.W.2d at 899–900. In *O'Brien*, we explained that the legislature amended the comparative-fault statute in 2003 to limit joint-and-several liability under subdivision 1, but left subdivision 2 intact. *Id.* at 899. And if the legislature had intended to limit reallocation to cases involving joint-and-

several liability, it could have done so expressly, as it did in subdivision 1. *Id.* Because the legislature declined to change subdivision 2, we declined to read a limitation into the statute that is not clear from its plain language. *Id.* We are bound by supreme court opinions and by published opinions of this court. *State v. M.L.A.,* 785 N.W.2d 763, 767 (Minn.App.2010). Thus, we reject the diocese's argument and follow the holding in *O'Brien,* which states that the plain language of Minn.Stat. § 604.02, subd. 2, "does not require joint and several liability as a prerequisite to reallocation." *O'Brien,* 823 N.W.2d at 900.

### Non–Defendant Tortfeasors

 The diocese argues that even if the reallocation provision applies without a finding of joint-and-several liability, it does not apply to a tortfeasor who is not a party to the litigation. But the supreme court has stated that the term "party" in the reallocation provision is not limited to the "restrictive definition" of "a party to a lawsuit." *Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289, 293 (Minn.1986) (*Hosley I* ). Instead, the term "party" more broadly applies to "a person whose fault has been submitted to the jury" or "parties to the transaction." *Id.* In *Staab II,* the supreme court confirmed this broader definition. 813 N.W.2d at 76 (endorsing the *Hosley I* definition of "party" as "all persons who are parties to the tort, regardless of whether they are named in the lawsuit"). We therefore conclude that because Richard Staab's fault was submitted to the jury, and the jury found him at fault, he is a "party" within the meaning of the reallocation provision.

### Judgment

 Notwithstanding this broad definition of "party," the diocese argues that the reallocation provision applies only if a judgment has been entered against the party whose share is to be reallocated. It asserts that the plain meaning of the term "obligation" refers to the party's legal duty to pay damages, which arises upon entry of judgment. The diocese reasons that "[b]ased on the use of the word 'judgment,' the plain meaning of the term 'obligation' and the juxtaposition of the two words within the statute, the term 'obligation' in the statute refers to the judgment entered in favor of a plaintiff." We disagree.

The diocese's argument that the term "obligation" refers to the term "judgment" is contrary to our presumption that distinctions in statutory language are intentional. *Hosley I,* 383 N.W.2d at 293; *Transp. Leasing Corp. v. State,* 294 Minn. 134, 137, 199 N.W.2d 817, 819 (1972) ("Distinctions of language in the same context must be presumed intentional and must be applied consistent with that intent."). Given this presumption, we must construe the reallocation provision so as to give effect to the distinction between the terms "obligation" and "judgment."

 "Obligation" is defined as a "legal or moral duty to do or not do something." *Black's Law Dictionary* 1179 (9th ed.2009). The term "obligation" in subdivision 2 can thus be read to refer to the duty owed by a tortfeasor who is a party to the tort and the litigation (a legal duty), or the duty owed by a tortfeasor who is a party to the tort but not the litigation (a moral duty), or both. Given that a "judgment" applies only to the former and "obligation" means something different than "judgment," we read "obligation" to encompass both the legal and the moral duty to remedy a plaintiff's injuries, as determined by the jury award.

This interpretation is consistent with the supreme court's recognition that its "decision in *Hosley[I* ] clearly contemplates assignment of equitable shares of an obli-

gation to nonparty tortfeasors." *See Staab II*, 813 N.W.2d at 77 (citing *Hosley I*, 383 N.W.2d at 293). And the reallocation provision provides for the reallocation of the uncollectible amount associated with the "equitable share[s] of the obligation." Minn.Stat. § 604.02, subd. 2. Because equitable shares of an obligation can be assigned to nonparty tortfeasors, those shares can be reallocated pursuant to subdivision 2.

The diocese points to language in *O'Brien* that recognized the "established proposition that when only one defendant is liable on a judgment, that defendant's share cannot be reallocated among other tortfeasors who are not subject to the judgment." 823 N.W.2d at 900. Relying on this language in *O'Brien*, the diocese asserts that "reallocation is not appropriate [here] because Richard Staab is not a party and he is not subject to a judgment." We disagree. *O'Brien* merely states that a *defendant's* share cannot be reallocated when there is only one defendant; *O'Brien* is silent on whether a non-defendant-tortfeasor's share can be reallocated to a defendant-tortfeasor.

The diocese also argues that reallocation has never been applied in a situation where, as here, a judgment has not been entered against one tortfeasor. And in support of this position, it relies on a footnote in *Staab II*, in which the supreme court stated, "Neither the holding in *Schneider* nor our holding in this case relies upon the reallocation procedures of subdivision 2, and our holding in this case in no way alters our previous decisions regarding subdivision 2." *Staab II*, 813 N.W.2d at 79 n. 8. The supreme court's prior decisions regarding subdivision 2 are *Hosley I* and *Schneider v. Buckman*, 433 N.W.2d 98 (Minn.1988).

*Hosley I* supports the view that equitable shares of an obligation can be assigned to tortfeasors who are not a party to the litigation. *See Staab II*, 813 N.W.2d at 77 (citing *Hosley I*, 383 N.W.2d at 293). And *Schneider* does not hold to the contrary.

In *Schneider*, the sole defendant was found to be jointly-and-severally liable, along with three other co-tortfeasors not subject to the judgment, under subdivision 1 of a pre–2003 version of Minn.Stat. § 604.02. 433 N.W.2d at 102–03. That version stated, "When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award." Minn.Stat. § 604.02, subd. 1 (1986). Because the sole defendant was liable "for the whole award," there was no need to apply subdivision 2 to reallocate the shares associated with non-defendant-tortfeasors; the sole defendant already was required to pay 100% of the damages. *Schneider*, 433 N.W.2d at 103. Thus, *Schneider* merely establishes that when there is only one defendant, and that defendant is found to be jointly-and-severally liable under subdivision 1, reallocation under subdivision 2 does not apply.

But unlike *Schneider*, the co-tortfeasors here were not found jointly-and-severally liable under Minn.Stat. § 604.02, subd. 1. As a result, the diocese was not required to pay 100% of the damages under subdivision 1. *See Staab II*, 813 N.W.2d at 80. It does not follow under *Schneider* that when subdivision 1 does *not* apply to make one defendant liable for 100% of the damages, subdivision 2 does not apply. Therefore, the supreme court's footnote in *Staab II* that its decisions regarding subdivision 2 remain unaltered does not affect our analysis. Neither *Hosley I* nor *Schneider* contradicts our conclusion that reallocation can apply when one tortfeasor is not a party to the litigation.

## Uncollectibility

■ The diocese argues that an obligation cannot become "uncollectible" within the meaning of the reallocation provision without a judgment to legally enforce it. The district court found that the amount allocated to Richard Staab was uncollectible "because of the lack of any claim against him coupled with the expiration of the statute of limitations, which would bar commencement of any direct claim by [Alice Staab]."

The diocese relies on *Hosley v. Pittsburgh Corning Corp.*, 401 N.W.2d 136 (Minn.App.1987), *review denied* (Minn. Apr. 23, 1987) (*Hosley II* ), a decision from this court after the supreme court remanded for a determination of uncollectibility in *Hosley I*. In *Hosley II*, we considered whether it was premature to find uncollectible the shares of a defendant who had been severed from the case because of bankruptcy proceedings. *Id.* at 139–40. The district court had determined that a request for reallocation was premature because no judgment had been entered against the severed defendant and because it was, at that point, unclear whether or not the plaintiff would be able to recover from the severed defendant due to ongoing bankruptcy proceedings. *Id.* at 138. We affirmed the district court's decision that a finding of uncollectibility was premature. *Id.* at 140.

The diocese argues that the holding in *Hosley II* means that a judgment must exist in order for the district court to find a party's equitable share of the obligation uncollectible. We disagree.

In *Hosley II*, uncollectibility was premature for two reasons: the co-tortfeasor was not subject to a judgment *and* the co-tortfeasor was involved in bankruptcy proceedings. *Id.* at 138. Thus, the possibility remained that the plaintiff could recover from the co-tortfeasor at the conclusion of the bankruptcy proceedings. Here, the district court determined that Richard Staab's share was uncollectible because Richard Staab was not subject to a judgment and there remains no possibility that Alice Staab can recover from Richard Staab due to the expiration of the statute of limitations. This finding was not premature. Alice Staab has no means of collecting against Richard Staab. Under the plain language of the statute, Richard Staab's equitable share of the obligation is uncollectible.

Finally, we note that the dissent in *Staab II* contemplated our result based on the *Staab II* majority's interpretation of subdivision 1:

> Richard Staab is a party to the tort whose 'equitable share of the obligation is uncollectible,' Minn.Stat. § 604.02, subd. 2, because he cannot be required to contribute to the judgment. Upon motion, the district court would be required to reallocate that uncollectible amount to the Diocese.

*Staab II*, 813 N.W.2d at 85 (Meyer, J., dissenting). Although the dissent is not binding, it provides further support for the district court's conclusion that the reallocation provision applies even when one tortfeasor is not a party to the litigation. We conclude that the district court did not err by finding Richard Staab's share of the obligation uncollectible and thereafter reallocating that share to the diocese.

## II.

■ Alice Staab argues that the district court should have awarded interest on the unpaid judgment from March 25, 2009—the date of the jury verdict. "When a judgment or award is for the recovery of money," a party is entitled to "interest from the time of the verdict, award, or report until judgment is finally entered." Minn.Stat. § 549.09, subd. 1(a) (2012).

The rationale for interest under this provision is to compensate a plaintiff "for the loss of the use of money to which plaintiff has been entitled since the time the verdict was rendered." *McCormack v. Hankscraft Co.*, 281 Minn. 571, 573, 161 N.W.2d 523, 524 (1968). Interest is available in this case "only if damages are 'readily ascertainable' and liability issues are determined." *Bilotta by Cutting v. Kelley Co.*, 358 N.W.2d 679, 681 (Minn.App.1984), *review denied* (Minn. Mar. 13, 1985).

Here, Alice Staab was not entitled to all of the money awarded by the jury at the time of the jury verdict. The jury awarded 50% of the fault to Richard Staab. But the district court did not have jurisdiction to enter a judgment against Richard Staab because he was not a party to the litigation. *See Staab II*, 813 N.W.2d at 83 (noting that a district court has no jurisdiction to require a person who is not a party to the litigation to contribute a judgment) (citing *Hurr v. Davis*, 155 Minn. 456, 459, 193 N.W. 943, 944 (1923)). Because the district court had no jurisdiction to render Richard Staab's obligation of the jury verdict legally enforceable, Alice Staab was not entitled to that portion of the verdict— and the diocese was not liable to pay it—at the time the jury returned a verdict.

It was not until Alice Staab moved the court for reallocation and the district court made a finding of uncollectibility that the diocese was legally required to pay Richard Staab's portion of the jury verdict. *See Hosley I*, 383 N.W.2d at 294 (noting that the reallocation provision requires both a motion to the court and a finding of uncollectibility before reallocation can occur). Thus, interest did not begin to accrue until Alice Staab became entitled to the use of the money upon the district court's order for reallocation.

## DECISION

The district court did not err by reallocating Richard Staab's portion of the jury verdict to the diocese. The plain language of the reallocation provision does not require that a tortfeasor be a party to the litigation or that a judgment be entered against a party for a finding of uncollectibility. And when a district court orders reallocation, interest accrues from the date of the order for reallocation, not the date of the verdict.

**Affirmed.**

Concurring in part, dissenting in part, SCHELLHAS, Judge.

SCHELLHAS, Judge (concurring in part, dissenting in part).

I concur with the majority's opinion that, when a district court reallocates a part of a jury verdict, the plaintiff is entitled to post-verdict interest on the reallocated part from the date of the district court's reallocation order. But I respectfully dissent from the majority's conclusion that, when a jury apportions fault to multiple tortfeasors, a district court may reallocate the uncollectible amount allocated to a non-defendant tortfeasor under Minn.Stat. § 604.02, subd. 2 (2012).

In *Staab v. Diocese of St. Cloud*, the Minnesota Supreme Court concluded that

> the 2003 amendments to [Minn.Stat. § 604.02, subd. 1(1)(4)] clearly indicate the Legislature's intent to limit joint and several liability to the four circumstances enumerated in the exception clause, and *to apply the rule of several liability in all other circumstances*. In order to give effect to this intent, the statute must be interpreted to apply in all circumstances in which a person would otherwise be jointly and severally liable at common law, and a person is liable at common law at the moment the

tort is committed, not as a result of a judgment. This interpretation is consistent with the common law and *limits the application of joint and several liability to those circumstances that are explicitly specified in the statute.*

813 N.W.2d 68, 78 (Minn.2012) (emphasis added) (*Staab II* ). In addressing the dissent, the *Staab II* majority noted that, although "Minnesota *retained* the doctrine of joint and several liability" after Minnesota's statutory comparative-fault scheme, "it also *limited the application* of the doctrine under the statutory comparative negligence scheme. Thus, the mere retention of joint and several liability in limited form prior to the 2003 amendments does not inform the analysis of the extent to which the 2003 amendments *further limited the doctrine.*" *Id.* (emphasis added). And the supreme court addressed the dissent's reliance on *Schneider v. Buckman,* 433 N.W.2d 98 (Minn.1988), noting that

> in the version of the statute in effect at the time *Schneider* was decided, the "except" clause encompassed *all* liable persons, and therefore encompassed the defendant. Therefore, subdivision 1 did not limit the [sole] defendant's contribution to an amount "in proportion to his percentage of fault," but rather left him liable "for the whole award."

*Id.* at 79. The supreme court noted that "the defendant [in *Schneider* ] was required to pay 100% of Schneider's damages because he was jointly and severally liable for the entire award under the common law rule as applied through subdivision 1." *Id.* at 79 n. 8. Contrasting *Staab II* with *Schneider,* the supreme court said, "here, the Diocese is *not* required to pay 100% of Staab's damages because it is *not* jointly and severally liable for the entire award under subdivision 1." *Id.*

In this case, the district court relied upon the reallocation procedures of section 604.02, subdivision 2, to reallocate the uncollectible amount of Staab's allocation to the diocese. In *Staab II,* the supreme court stated that "*our holding ... in no way alters our previous decisions regarding subdivision 2.*" *Id.* at 79 n. 8 (emphasis added). In *Schneider,* a previous decision regarding subdivision 2, the supreme court stated that "the reallocation procedures of Minn.Stat. § 604.02, subd. 2, as interpreted in *Hosley I,* are not implicated where, as here, there is but one defendant against whom judgment can be or has been entered." 433 N.W.2d at 103. In this case, there is but one defendant against whom judgment can be or has been entered, the diocese. Based upon the supreme court's decisions in *Staab II* and *Schneider,* I would conclude that subdivision 2 is not implicated in this case, and that, because the diocese is not jointly and severally liable for the entire award under subdivision 1, the diocese is not required to pay 100% of Staab's damages.

I would reverse the district court's reallocation to the diocese of the uncollectible amount allocated to Richard Staab.