LILLEHAUG, Justice
(dissenting).
Today a blameless plaintiff, who was thrown out of her wheelchair onto a cement sidewalk, is denied a remedy for half of the damages she suffered. Today the solvent tortfeasor, whose negligence caused the plaintiff to be thrown onto the cement sidewalk, benefits. This result violates the plain words of the law, judicially amends what the Legislature did not, and ignores our long-standing rule that statutes in derogation of the common law must be strictly construed. So I respectfully dissent.
I.
Minnesota has followed the common law rule of joint and several liability since at least 1888. See Flaherty v. Minneapolis & St. Louis Ry. Co., 89 Minn. 328, 329, 40 N.W. 160, 160-61 (1888); Virtue v. Creamery Package Mfg. Co., 123 Minn. 17, 39, 142 N.W. 930, 939 (1913). In 1969, the Legislature modified the common law by adopting Minn.Stat. § 604.01, the comparative fault law.
In 1978, the Legislature again modified the common law by passing Minn.Stat. § 604.02. Staab v. Diocese of St. Cloud (Staab II), 813 N.W.2d 68, 73 (Minn.2012).[1] Section 604.02 as passed consisted of three subdivisions.
Subdivision 1 initially provided that jointly and severally liable persons must contribute “in proportion to” their percentage of fault, while remaining “liable for the whole award.” Minn.Stat. § 604.02, subd. 1 (1978). Since 1978, subdivision 1 has been amended repeatedly. The most recent amendment was in 2003, when the Legislature limited the ability of plaintiffs to collect their full awards immediately from tortfeasors whose percentage of fault is less than 51 percent. See Act of May 19, 2003, ch. 71 § 1, 2003 Minn. Laws 386, 386 (codified at Minn.Stat. § 604.02, subd. 1 (2012)). Subdivision 1 now provides that, with four exceptions not applicable here, “[w]hen two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each.” Minn.Stat. § 604.02, subd. 1 (2012).
The 2003 Legislature passed the amendment of subdivision 1 against the backdrop *723 of subdivisions 2 and 3, also passed in 1978. The 2003 Legislature kept subdivisions 2 and 3 intact.
Subdivision 2, captioned “Reallocation of uncollectible amounts generally,” applies to cases in which “respective percentages of fault” have been determined and judgment has been entered. Minn.Stat. § 604.02, subd. 2. In such cases, upon motion within a year of judgment, “the court shall determine whether all or part of a party’s equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution. ...” Id.
Subdivision 3, too, deals with reallocation, carving out an exception to the general reallocation provisions of subdivision 2. Captioned “Product liability; reallocation of uncollectible amounts,” subdivision 3 contains specific rules for reallocation of uncollectible amounts among persons in the chain of manufacture and distribution of a product. Minn.Stat. § 604.02, subd. 3.
II.
The question in this case, in which “respective percentages of fault” have been determined and judgment has been entered, is whether, as Alice Staab contends and the district court and the court of appeals held, subdivision 2 must be applied as written, requiring reallocation to the solvent tortfeasor of the insolvent tortfea-sor’s uncollectible equitable share based on their respective percentages of fault. The Diocese of St. Cloud (the Diocese) contends that the 2003 amendment to subdivision 1 also silently amended subdivision 2, thereby prohibiting reallocation except in the four exceptional categories of cases referenced in subdivision 1.
In answering this question, we do not write on a blank slate. In Staab II, this court interpreted subdivision 1 to limit the contribution of a tortfeasor to an award in favor of the injured, non-negligent claimant. 813 N.W.2d at 80. Staab II held that the Diocese, the only named defendant in the case, need contribute only 50 percent of the award in light of the jury’s attribution of the other 50 percent of the fault to a non-party “empty chair”: Alice Staab’s husband, Richard. Id.
In interpreting subdivision 1, Staab II relied heavily on our long-standing rule that statutes in derogation of the common law are strictly construed and on the common law doctrine that liability and equitable shares are created at the moment a tort is committed. Id. at 73-74. Applying these principles, Staab II held that the contribution limitation in subdivision 1 applies when more than one tortfeasor acts to cause an indivisible harm to a claimant, regardless of how many tortfeasors are named in a lawsuit. Id. at 77.
Three justices dissented. They noted that the majority had defined the word “persons” in subdivision 1 and the word “parties” in subdivision 2 to mean the same thing: all persons who are parties to the tort, regardless of whether they are named in the lawsuit. Id. at 84-85 (Meyer, J., dissenting). Based on that definition, the dissenters predicted that the majority opinion in Staab II would “effectively obligate the Diocese to pay the entire award anyway” after reallocation under subdivision 2.[2] 813 N.W.2d at 85.
The Staab II dissenters’ prediction that the Staab II majority would follow its own *724 logic was, unfortunately, incorrect. The majority today both misreads subdivision 2 and declines to apply the principles underlying Staab II, including the rule that statutes in derogation of the common law must be strictly construed.
III.
I first consider whether the words of the law are clear, unambiguous, and explicit. Minn.Stat. § 645.16 (2012). If so, I must “apply the statute’s plain meaning.” Brayton v. Pawlenty, 781 N.W.2d 357, 368 (Minn.2010) (citation omitted) (internal quotation marks omitted).
In this case, the words of the law “in their application to an existing situation are clear and free from all ambiguity.” Minn.Stat. § 645.16. Under subdivision 2, we must first identify the tortfeasor “parties.” Then we must identify each party’s “equitable share of the obligation” by each party’s “respective percentages of fault.” Then we must determine whether a motion for reallocation has been made not later than one year after judgment. Finally, we must determine if a party’s equitable share is uncollectible. If so, the plain words of subdivision 2 require that the district court “shall reallocate” the uncollectible amount.
Applying the plain words of the statute, as confirmed by Staab II, both the Diocese and Richard Staab were tortfeasor “parties.” Alice Staab sustained indivisible harm from the parties’ actions. The jury determined each party’s “equitable share of the obligation” by allocating “respective percentages of fault.” A motion for reallocation was made no later than one year after judgment. Richard Staab’s equitable share was uncollectible. Therefore, the text of subdivision 2 clearly and unambiguously required that the district court reallocate Richard Staab’s uncollectible amount to the Diocese.
The majority acknowledges that this straightforward reading of subdivision 2 is reasonable. As the majority concedes, “[tjhe text of subdivision 2 indicates that any party is subject to reallocation.” (Emphasis added.) That concession regarding the plain meaning of the text should end the discussion.
But, says the majority, it is also reasonable to read the 2003 amendment to subdivision 1 as silently amending subdivision 2, thereby making subdivision 2 ambiguous. Oddly, the majority points to no ambiguous words or phrases in either subdivision 1 or subdivision 2. It cites no alternative dictionary definitions. Rather, the majority’s theory seems to be that subdivision 2 as a whole must be ambiguous because, if it were read and applied literally, subdivision 2 would “completely eviscerate[ ]” what the majority surmises the 2003 Legislature intended in subdivision 1. The majority’s analysis turns statutory interpretation on its head by using the purported legislative spirit behind one subdivision to create a cloud of ambiguity over another subdivision. See Minn.Stat. § 645.16 (“When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.”). The proper method of analysis is to determine first whether there is ambiguity in the statute’s text and, if so, then and only then apply the canons of construction, including contemporaneous legislative history. Id.
Thus, the majority eschews the plain words and uses a questionable method of statutory analysis. But the majority’s reading of subdivision 2 is unreasonable for four other reasons.
First, the majority opinion conflicts with our black-letter case law on how we read subdivision amendments. By the majority’s reasoning, Minnesota courts must now read subdivision 2 differently than they did from 1978 until today’s decision. But our *725 rule is that, when one subdivision of a statute is amended and another is not, unless there are words showing ah intent to amend, “the second subdivision means just what it meant before the first subdivision was amended....” Sorseleil v. Red Lake Falls Milling Co., Ill Minn. 275, 278,126 N.W. 903, 904 (1910). Such intent to amend must be clear, as We do not favor amendment by implication. We assume that, if the Legislature deliberately intends to amend a subdivision, it Will do so directly and not leave it to inference. Brown v. Vill. of Heron Lake, 67 Minn. 146, 147, 69 N.W. 710, 710 (1897); see also Minn.Stat. § 645.39 (2012) (providing that “a later law shall not be construed to repeal an earlier law unless the two laws are irreconcilable” or the later law “purports to be a revision of all laws upon a particular subject”). Typically, “continuity of text equals continuity of meaning.” In re Towers, 162 F.3d 952, 954 (7th Cir.1998).
Second, and in a related vein, the majority opinion conflicts with our rule that we do not, and cannot, add to a statute words or meaning intentionally or inadvertently omitted by the Legislature. Rohmiller v. Hart, 811 N.W.2d 585, 590 (Minn.2012); Genin v. 1996 Mercury Marquis, 622 N.W.2d 114, 117 (Minn.2001). It would have been easy for the Legislature to say what the majority now divihes it rtiust have meant to say. As the majority opinion correctly notes, “[t]he Legislature could have provided an express exception to subdivision 2 for parties who are severally liable under subdivision 1, but it did not do so.” When it amended subdivision 1, the Legislature could have said, for example: “contributions to awards shall be in proportion to the percentage of fault attributable to each regardless of collectibility.” But it did not. Or the Legislature could have amended subdivision 2 to read: “Upon motion made not later than one year after judgment is entered in a joint liability case under subdivision 1.” But it did not. Or: “the court shall determine whether all or part of a party’s equitable share of the obligation under subdivision 1 is uncollectible.” But it did not.
By contrast, subdivision 3 of the same statute, passed at the same time as subdivision 2, demonstrates beyond doubt that, when the Legislature wants to limit reallocation of uncollectible amounts, it very well knows how to do so. Subdivision 3 states: “Provided, however, that a person whose fault is less than that of a claimant is liable to the claimant only for that portion of the judgment which represents the percentage of fault attributable to the person whose fault is less.” There is nothing like that in subdivision 2.
To justify what is essentially the judicial addition of words to subdivision 2, the majority falls back on “expressio unius,” the canon that “[ejxceptions expressed in a law shall be construed to exclude all others,” Minn.Stat. § 645.19 (2012). The majority theorizes that the four joint liability exceptions in subdivision 1 thereby exclude reallocation under subdivision 2. But ex-pressio unius must be used with great caution,[3] and “is only justified when the *726 language of the statute supports such an inference,” State v. Caldwell, 803 N.W.2d 373, 383 (Minn.2011).
There is no such justification in this case. Subdivision 1 speaks in terms of “contributions to awards,” while subdivision 2 speaks in terms of “a party’s equitable share of the obligation.” Subdivisions 1 and 2 may be read together, straightforwardly and logically, and harmonized. Under subdivision 1, a tortfeasor need not contribute more to the award than its percentage of fault if there is another solvent tortfeasor; and, under subdivision 2, only upon motion and a determination of insolvency may a tortfeasor be required to pay more, while maintaining its claim for contribution.
Third, while purporting to read subdivisions 1 and 2 together, the majority opinion conflicts with the rule that a statute must be read in a manner that gives effect to each and all of its provisions. See Minn. Stat. § 645.16. This means that we must read together and harmonize not only subdivisions 1 and 2, but also subdivision 3, which was part of the original section 604.02 and remains intact. See Minn.Stat. § 645.31, subd. 1 (2012) (“When a section or part of a law is amended ... the remainder of the original enactment and the amendment shall be read together....”) (emphasis added). Had the 2003 amendment to subdivision 1 silently amended subdivision 2 (by expressio unius or otherwise) to limit reallocation to the four joint liability exceptions in subdivision 1, then, logically, we would have to read subdivision 3, passed at the same time as subdivision 2, as similarly amended and so limited. Put another way, by the majority’s analysis, subdivision 1 would require that, in a product liability case, reallocation of an insolvent party’s percentage of an award would be triggered only if the products liability case first fit within one of the four joint liability exceptions in subdivision 1.
But to read subdivisions 1, 2, and 3 together in that way would make no sense. Like subdivision 2, subdivision 3 continues to stand on its own. Just as subdivision 2 clearly applies “generally” to all multi-party tort cases in which percentages of fault are found, so, too, does subdivision 3 apply to all product liability cases in which multiple parties in the chain of manufacture and distribution are at fault. Indeed, subdivision 3 expressly provides for reallocation to parties whose negligence is less than 50 percent. This is another signal that we should read subdivision 2 as written.
Fourth, the majority’s holding that subdivision 1 tacitly amended subdivision 2 conflicts with yet another basic presumption of statutory interpretation: that statutes in derogation of common law must be strictly construed.[4] This presumption occupied center stage in Staab II.[5] As Staab II held, when interpreting section 604.02, we should not presume that the Legislature intended to abrogate or modify a common law rule except to the extent “expressly declared or clearly indicated in the statute.” 813 N.W.2d at 73; see also Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn.2000) (“We have ... long presumed that statutes *727 are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication.”).
There is no such express wording or necessary implication here. By reading subdivision 1 to amend unamended subdivision 2, the majority sidesteps this important presumption applied previously in this case and in many others. The concept that a plaintiff who has suffered an indivisible injury cannot ever recover the insolvent tortfeasor’s share, in preference to a solvent tortfeasor, is an abrogation of the common law. If the Legislature intended such abrogation, it had to say so clearly. It did not.[6]
Accordingly, the words of subdivision 2 in their application are clear and free from all ambiguity. Subdivision 2 meant what it said when it was enacted in 1978 and should mean the same now.
So, on what does the majority rely to show that the 2003 Legislature intended to amend subdivision 2 without changing a single word? Precious little. The majority relies primarily on several statements during the 2003 floor debates. But the legislators’ statements (on both sides of the question) were general and did not directly address how the specific words of the amendment to subdivision 1 would or would not amend the unchanged words of subdivision 2, governing reallocation of un-collectible amounts generally, or subdivision 3, governing reallocation of uncollectible amounts in product liability cases. As counsel for the Diocese confirmed at oral argument: “But to directly answer your question, I don’t believe there is anything, I’ll say, of significance in the legislative history in 2003 relative to subdivision 2.”
IV.
By its order dated August 8, 2012, the district court faithfully applied the plain words of subdivision 2 to this case. Under subdivision 1, Alice Staab initially could collect only 50 percent of her award from the Diocese. She timely made her motion for reallocation, thereby triggering subdivision 2. Subdivision 2 required that, upon such motion, the district court determine whether Richard Staab’s equitable share of the obligation was uncollectible. The district court determined that it was.
Properly and logically, applying subdivision 2, the district court reallocated Richard Staab’s uncollectible share to the only other party at fault, the Diocese. Pursuant to subdivision 2, that reallocation did not extinguish Richard Staab’s equitable share of the obligation and the Diocese retained its right to contribution from him. The district court followed subdivision 2 exactly.
The court of appeals,[7] in Staab III, also faithfully applied what it called the “plain language” of subdivision 2. 830 N.W.2d at 46-47. This was not the first court of appeals panel to read the clear, unambiguous words of subdivision 2 as requiring reallocation from an insolvent tortfeasor to a solvent, severally liable tortfeasor. In O’Brien v. Dombeck, also decided after Staab II, a unanimous panel, affirming the district court, held that the “plain text” of subdivision 2 required such reallocation. 823 N.W.2d 895, 899 (Minn.App.2012).[8]
*728 Unlike the panels and judges below who read the plain words of subdivision 2 with clear eyes, as illuminated by Staab II, today’s majority holds that the injured person must absorb half of her damages from the tort. Like the panels and judges below, my dissent to this holding is not based on a policy preference, but on the plain text of the statute read against the backdrop of 125 years of Minnesota common law.
V.
Given that reallocation under subdivision 2 was proper, I would reach and reject the Diocese’s alternative argument that, under subdivision 2, Richard Staab’s equitable share was not uncollectible, and reallocation could not be ordered, because there was no “judgment” against Richard Staab. Again, the Diocese seeks to benefit from its own strategic litigation decision not to bring in Richard Staab as a third-party defendant but to pass off as much fault as possible to an empty chair. Again, the Diocese’s argument is foreclosed by the plain words of the statute and the reasoning of Staab II.
Subdivision 2 does not use the word “judgment”; it uses the phrase “equitable share of the obligation.” As Staab II confirmed, the term “obligation” is different (and broader) than “judgment.” 813 N.W.2d at 76.
In this case, there was no judgment against Richard Staab because the Diocese preferred to have an empty chair’s “respective percentage of fault” and “equitable share of the obligation” determined by the jury. As required by subdivision 2, the district court properly held a hearing on whether Richard Staab could pay and concluded that he could not. The record does not show, and the Diocese does not demonstrate, that the district court’s finding that Richard Staab’s equitable share was uncollectible is incorrect, much less clearly erroneous. See State v. R.H.B., 821 N.W.2d 817, 822 n. 8 (Minn.2012) (“A district court’s findings of fact will not be disturbed unless they are clearly erroneous.”).
VI.
For all of these reasons, the blameless plaintiff should not bear 50 percent of her loss while a solvent tortfeasor escapes reallocation. The court of appeals decision, affirming the decision of the district court, should be affirmed.
One of the pillars in our state constitution’s bill of rights is the guarantee that every person is entitled to a “certain remedy” for injuries with the right to “obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.” Minn. Const, art. I, § 8. Today’s decision chisels a chunk from that pillar.

. Staab I was the first court of appeals decision in this case, 780 N.W.2d 392 (Minn.App. 2010). Staab II was this court’s decision affirming and modifying Staab I. Staab III was the court of appeals decision after subsequent proceedings, 830 N.W.2d 40 (Minn.App. 2013), which the court reverses today in what will be known as Staab IV.

. In response, the Staab II majority said only: “The application of subdivision 2 to this case is not before us, however, and therefore we do not reach it.” Staab II, 813 N.W.2d at 79 n. 7.

. See Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 703-04, 111 S.Cf. 2524, 115 L.Ed.2d 604 (1991) ("[T]he principle expressio unius est exclusio alterius is a questionable one in light of the dubious reliability of inferring specific intent from silence.”) (citation omitted) (internal quotation marks omitted); Ford v. United States, 273 U.S. 593, 612, 47 S.Ct. 531, 71 L.Ed. 793 (1927) (describing the maxim as "a dangerous master to follow”) (citation omitted) (internal quotation marks omitted); Christianson v. Henke, 831 N.W.2d 532, 535 n. 3 (Minn.2013) ("Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context.” (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012))).

. The presumption that we strictly construe statutes in derogation of the common law typically is applied before we determine whether a statute is ambiguous. See, e.g., Dahlin v. Kroening, 796 N.W.2d 503, 505 (Minn.2011); Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 377 (Minn. 1990).

. Staab II invoked the common law to define the word "party” in subdivision 2 to mean any party to the tort, regardless of whether that person is a party to the lawsuit. 813 N.W.2d at 77. Staab II further invoked the common law to define the phrase "equitable share of the obligation” in subdivision 2 to mean the equitable shares apportioned to each tortfeasor at the time of the tort. Id.

.By requiring that a judgment creditor make a motion and obtain a determination that an equitable share is uncollectible, subdivision 2 itself is a departure from the common law of collection in multi-party tort cases.

. The decision was 2-1. The dissent was on a ground not reached by the majority in this case.

. The solvent tortfeasor in O'Brien did not petition this court for review.