# W. A. SORSELEIL v. RED LAKE FALLS MILLING COM-PANY.[1]

June 24, 1910.

Nos. 16,536—(133).

**Belt shifters in grain elevator — charge to jury.**

The plaintiff, an employee of the defendant in its grain elevator, was injured by his hand being caught between a belt and pulley while attempting, with his hands, to place the belt upon the pulley. He brought this action for damages on the ground that his injury was caused by the failure of the defendant to furnish a belt shifter. Verdict for the defendant. *Held:*

1. The relation of attorney and client between a juror and the attorney of one of the parties to the action is not a ground for challenging the juror for implied bias.

2. Section 1814, R. L. 1905, requiring the owner of every factory, mill, or workshop to furnish, if practicable, belt shifters for the purpose of shifting belts, applies to owners of grain elevators.

3. The trial court erred in refusing to instruct the jury to the effect that it was the duty of the defendant, if it was practicable, to have furnished belt shifters for the purpose of shifting belts.

Action transferred to Red Lake county, to recover $10,500 for personal injuries sustained while employed in defendant's elevator. The facts are stated in the opinion. The case was tried before Watts, J., and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Reversed and new trial granted.

*W. E. Rowe,* for appellant.
*Chas. E. Boughton,* for respondent.

Start, C. J.

The plaintiff, on and prior to December 9, 1904, was in the service of the defendant as operator of its grain elevator, and machinery therein, at St. Hilaire, this state. On the day named, and while

[1] Reported in 126 N. W. 903.

he was attempting to shift a belt on a pulley with his hands, one of them was caught between the belt and pulley and thereby permanently injured. He brought this action in October, 1908, to recover damages for such injury on the ground that it was caused by the alleged negligence of the defendant in maintaining the pulley and countershaft in a defective and dangerous condition, in consequence of which the belt would not stay on the pulleys when the machinery was in motion, making it necessary to replace it thereon, and in failing to furnish a belt shifter or other safe appliance for shifting the belt. The answer denied that the defendant was negligent, and alleged that the plaintiff's injury was the result of his contributory negligence. The action was brought in the county of Polk, but was transferred to and tried in the county of Red Lake. The jury returned a verdict for the defendant, and the plaintiff appealed from an order denying his motion for a new trial.

1. The first question raised by the record is whether the relation of attorney and client between a juror and the attorney for one of the parties to the action will sustain a challenge of the juror for implied bias. The answer depends on whether the statute provides that such relation shall be a ground of challenge for implied bias.

It is provided by R. L. 1905, § 4170, that jurors in a civil action may be challenged for the same causes and in the same manner as jurors in criminal cases. The grounds for a challenge for implied bias in criminal cases, so far as here material, are these: "A challenge for implied bias may be taken for all or any of the following causes, and for no other: (1) The consanguinity or affinity, within the ninth degree, to the person alleged to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted, or to the defendant (or to any one of the attorneys either for the prosecution or for the defense); (2) standing in relation of guardian and ward, attorney and client, master and servant, landlord and tenant, or being a member of the family of the defendant, or of the person alleged to be injured by the offense, or on whose complaint the prosecution was instituted, or in his employment on wages. * * *" [R. L. 1905, § 5391.] This statute, with the exception of the clause which we have inclosed in parentheses, is, in

all substantial respects, in the same language that it was when first adopted in Minnesota in 1851. R. S. 1851, p. 560, c. 128, § 189; G. S. 1866, p. 660, c. 116, § 19. It was not until 1878 that the clause inclosed in parentheses was added to the first subdivision of the section. Laws 1878, p. 87, c. 24, § 1.

The claim of counsel for appellant is to the effect that the second subdivision of section 5391 is ambiguous as to the identity of the persons to whom the juror must sustain the relation therein specified in order to furnish a ground of challenge for implied bias, and therefore reference must be had to the evident intent of the legislature; that it must have been the legislative intent that the second subdivision should apply, not only to the parties, but also to their attorneys, for if relationship in the ninth degree between a juror and the attorney for one of the parties be ground for a challenge for implied bias, then the relation of attorney and client between the juror and one of the attorneys of the parties must also be held, by necessary intendment, to be a ground for such a challenge.

This reasoning seems plausible, but it is unsound; for there has never been any change in the language of the second subdivision since its enactment in 1851, and prior to 1878 consanguinity or affinity in the ninth degree of a juror to the attorney of a party was not a ground of challenge of a juror for implied bias. There is no ambiguity in either the first or second subdivision of section 5391 as applied to a criminal case. The apparent ambiguity arises in their application by section 4170 to civil actions; but as to such actions there is no real ambiguity, for the clear inference from sections 4170 and 5391, when read together, is that in civil actions it is the relation of the juror as therein specified to the parties to the action or to the person for whose benefit it is prosecuted which subjects the juror to a challenge for implied bias.

The legislature provided by section 5391 that there should be no challenge for implied bias except as therein expressly enumerated. It then proceeded in the first subdivision to deal exclusively with consanguinity or affinity as a ground for such a challenge, and, as originally enacted, expressly limited such relation of the juror to the person injured by the offense charged, to the person on whose com-

plaint the prosecution was instituted, and to the defendant. This first subdivision is complete in itself, and necessarily excludes the relation of the juror by consanguinity or affinity to all other persons or parties. The legislature then proceeded by the second subdivision to deal exclusively and completely with the conventional relations therein specified between the juror and the persons and parties expressly designated therein, as a ground of challenge for implied bias. This subdivision is also complete in itself. It is in no manner dependent upon the first subdivision, and sustains no relation to it. This is perfectly obvious if the order in which the two subdivisions are placed and numbered is reversed, and the second one is read first. How, then, can the amendment of the first subdivision in 1878, which simply added the consanguinity or affinity of a juror to the attorney of a party as a ground of challenge for implied bias, be construed as amending the second subdivision, by adding to the list of persons therein specifically enumerated, whose conventional relation to the juror will disqualify him, his own attorney? Clearly it cannot be, for the two subdivisions as suggested are in no manner interdependent; hence the amendment of the one does not amend the other, in the absence of any words in the amendment to that effect.

We therefore hold that the second subdivision means just what it meant before the first subdivision was amended, and that the relation of attorney and client between a juror and the attorney for one of the parties to the action is not a ground for challenge of the juror for implied bias.

2. The other assignments of error relate to the rulings of the trial court in admitting or excluding evidence, and its instructions and refusal to instruct the jury. Whether the court erred to the prejudice of the defendant in any of these respects depends upon the question whether section 1814, R. L. 1905, applies to this case. The section, so far as here material, reads as follows: "Every owner of a factory, mill, or workshop where machinery is in use shall furnish or cause to be furnished, wherever practicable, belt shifters or other safe mechanical contrivances for the purpose of throwing on or off belts or pulleys; and, whenever practicable, machinery shall be provided with loose pulleys. * * *" It is apparent from the record that

the trial court proceeded throughout the trial upon the assumption that the section did not apply to this case.

The principal ground of alleged negligence of the defendant relied upon by the plaintiff was in its failure to furnish any belt shifter or other safe mechanical contrivance for shifting the belts, and he offered evidence tending to show that it was practicable to do so. He requested the court to give this instruction: "The court charges you that it was the duty of the defendant, if it was practicable to do so and if it would not have interfered with the practical operation of the machinery, to have supplied the shafting referred to in the evidence—that is, the countershaft at the engine—with belt shifters, and also to have supplied the said shaft with loose pulleys, if it was practicable so to do."

The court refused to give the request, and instructed the jury that the first question for their determination was this: "Was the defendant, the Red Lake Falls Milling Company, guilty of negligence in failing to furnish to the plaintiff at St. Hilaire, in respect to this belt and pulleys and machinery attached to it, reasonably safe instrumentalities with which to work. * * * And if the plaintiff has failed to prove by a preponderance of the evidence in the case that the defendant, the Red Lake Falls Milling Company, was guilty of negligence in the respects I have named, then your verdict should be for the defendant, without going any further, or considering anything else. * * *" And further: "So you should not find that the Red Lake Falls Milling Company was guilty of negligence in the way they maintained that machinery, unless it would appear to be dangerous to a person of ordinary intelligence and prudence, an individual of ordinary intelligence and prudence in handling it."

It is obvious that the refusal to give the requested instruction and the giving of these instructions were reversible error if the statutory duty rested upon the defendant to furnish a belt shifter if practicable. Evidence was received on the part of the defendant, over the objection of the plaintiff, tending to show that one hundred seventy other grain elevators were not equipped with belt shifters. It was error to receive this evidence for the purpose of excusing the defendant from the statutory duty resting upon it of equipping the elevator

in question with belt shifters; but evidence of the customary way of equipping in this respect other elevators would be admissible upon the question of the practicability of using belt shifters in the defendant's elevator.    Anderson v. Fielding, 92 Minn. 42, 99 N. W. 357, 104 Am. St. 665.    But if the statute applies to this case, and it was practicable to furnish a belt shifter, the defendant was bound to do so, and its failure in this respect was negligence per se.    Glockner v. Hardwood Mnfg. Co., 109 Minn. 30, 123 N. W. 807.

The pivotal question is, then, whether the statute applies to grain elevators.    In the case of Hahn v. Plymouth Elevator Co., 101 Minn. 58, 111 N. W. 841, the plaintiff was injured, while attempting to shift a belt by using his hand, in a grain elevator, and brought the action against his employer to recover damages.    The specific negligence of the defendant alleged in the complaint was the defendant's failure to furnish a belt shifter.    It was assumed by the court and counsel that the statute applied to grain elevators.    In Rase v. Minneapolis, St. P. & S. S. M. Ry. Co., 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138, the plaintiff was a coal shoveler at an elevator and also in charge of the engine operating it.    While in the engine room he stumbled upon an unguarded belt and revolving pulley and was injured.    It was the contention of the defendant that the statute (R. L. 1905, § 1813) requiring dangerous machinery to be guarded did not apply to the case.    This court held that it did. If the factory act applies to an unguarded belt in the engine room of an elevator, it would seem to follow that it applies to the case at bar.

The act is a remedial one, and must be liberally construed; but it must be conceded that it is only the owner of a factory, mill, or workshop upon whom section 1814 imposes the statutory duty of furnishing belt shifters for the purpose of throwing on or off belts or pulleys.    A grain elevator is a building in which grain is cleaned and adapted for sale, as well as a warehouse for the storage and ready shipment of grain.    The term "workshop," as defined by Laws 1907, c. 356, § 2 (R. L. Supp. 1909, § 1797—3), means, so far as here material, any premises, room, or place, not a mill or factory, wherein manual labor is exercised for purposes of cleaning or adapting for sale any article or part thereof.    This includes a grain elevator, and

we hold that R. L. 1905, § 1814, requiring that the owner of every factory, mill, or workshop must furnish, wherever practicable, belt shifters for the purpose of throwing on or off belts, applies to the owners of grain elevators.

The defendant, however, claims that the refusal of the trial court to give the requested instruction and any alleged error in the instructions given were in any event harmless, for the reason that it is apparent from the record that the jury based their verdict solely upon the ground that the plaintiff was guilty of contributory negligence. It may be conceded that the evidence was sufficient to sustain a finding by the jury that the plaintiff was guilty of contributory negligence. It may also be guessed, from what passed between the court and the jury on their return into court for further instructions, that they found the plaintiff guilty of contributory negligence; but the only verdict returned was the general one for the defendant. The basis of their verdict, then, is simply a matter of conjecture, and it follows that the errors we have indicated were prejudicial.

Order reversed, and new trial granted.

JAGGARD, J.

I concur. The reasoning of the majority of the court in Rase v. Minneapolis, St. P. & S. S. M. Ry. Co., 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N. S.) 138, necessitates the conclusion here reached.