STATE OF MINNESOTA

IN SUPREME COURT

A12-1575
A12-1972

Court of Appeals                                                         Wright, J.
                                                    Dissenting, Lillehaug, Page, JJ.

Alice Ann Staab,

                    Respondent,

vs.                                                      Filed:  September 10, 2014
                                                        Office of Appellate Courts

Diocese of St. Cloud,

                    Appellant.

_____

Kevin S. Carpenter, Kevin S. Carpenter, P.A., Saint Cloud, Minnesota; and

H. Morrison Kershner, Pemberton, Sorlie, Rufer & Kershner, P.A., Fergus Falls,
Minnesota, for respondent.

Dyan J. Ebert, Laura A. Moehrle, Quinlivan & Hughes, P.A., Saint Cloud, Minnesota, for
appellant.

Richard J. Thomas, Bryon G. Ascheman, Corinne Ivanca, Burke & Thomas, PLLP, Saint
Paul, Minnesota; and

Robert L. McCollum, Cheryl Hood Langel, McCollum, Crowley, Moschet, Miller &
Laak, Ltd., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers
Association.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota, for amicus curiae
Minnesota Association for Justice.

_____

1

A party that is severally liable under Minn. Stat. § 604.02, subd. 1 (2012), cannot be ordered to contribute more than that party's equitable share of the total damages award under the reallocation-of-damages provision in Minn. Stat. § 604.02, subd. 2 (2012).

Reversed and remanded.

O P I N I O N

WRIGHT, Justice.

This negligence dispute presents two questions of statutory interpretation. We first consider whether the reallocation-of-damages provision in Minn. Stat. § 604.02, subd. 2 (2012), applies to parties who are severally liable pursuant to Minn. Stat. § 604.02, subd. 1 (2012). If the reallocation provision applies to severally liable parties, the second question is whether damages must be reduced to a judgment to be subject to reallocation under Minn. Stat. § 604.02, subd. 2. For the reasons addressed below, we hold that a party who is severally liable under Minn. Stat. § 604.02, subd. 1, cannot be required to contribute more than that party's equitable share of the total damages award through the reallocation-of-damages provision in Minn. Stat. § 604.02, subd. 2. We, therefore, reverse and remand to the district court for entry of judgment consistent with this opinion.

I.

Respondent Alice Staab was injured at Holy Cross Parish School when her husband Richard Staab pushed her wheelchair through an open doorway and over an unmarked five-inch drop-off. *Staab v. Diocese of St. Cloud (Staab I)*, 813 N.W.2d 68,

71 (Minn. 2012). Staab sued appellant Diocese of St. Cloud, which owns and operates Holy Cross Parish School, alleging that the Diocese failed to protect her from an unreasonable risk of harm created by the five-inch drop-off. *Id.* Richard Staab was not named as a party in the lawsuit. *Id.* At the close of the trial, the jury awarded compensatory damages of $224,200.70, attributing 50 percent of the negligence that caused Staab's injuries to the Diocese and 50 percent to Richard Staab. *Id.* Concluding that Minn. Stat. § 604.02, subd. 1, which limits liability for a severally liable person, does not apply when only one defendant is named in a lawsuit, the district court entered judgment for $224,200.70 against the Diocese. *Id.* at 72. In *Staab I*, we held that Minn. Stat. § 604.02, subd. 1, "applies when a jury apportions fault between a sole defendant and a nonparty tortfeasor, and limits the amount collectible from the defendant to its percentage share of the fault assigned to it by the jury." 813 N.W.2d at 80.

On remand, citing Minn. Stat. § 604.02, subd. 2, Staab sought reallocation of Richard Staab's equitable share of the damages award to the Diocese. The district court concluded that an uncollectible share of damages attributable to a nonparty tortfeasor can be reallocated under Minn. Stat. § 604.02, subd. 2. After determining that Richard Staab's equitable share is uncollectible, the district court entered judgment against the Diocese for the entire damages award.[1]

The court of appeals affirmed the reallocation. *Staab v. Diocese of St. Cloud (Staab II)*, 830 N.W.2d 40, 47 (Minn. App. 2013). The court of appeals concluded that

---

[1] The district court subsequently amended the judgment to reflect the damages that the Diocese had already paid to Staab.

Minn. Stat. § 604.02, subd. 2, applies to the Diocese because the Legislature did not expressly limit the application of subdivision 2 to jointly and severally liable parties. *Staab II*, 830 N.W.2d at 43-44. In support of its conclusion, the court of appeals reasoned that, for purposes of Minn. Stat. § 604.02, a "party" includes all parties to the tort, and liability arises at the time of the injury. *Staab II,* 830 N.W.2d at 44. As a result, the damages attributable to Richard Staab are a party's "equitable share of the obligation [that] is uncollectible." *Id.* at 46.

We granted the Diocese's petition for review.

II.

We first address whether Minn. Stat. § 604.02, subd. 2, can be applied to require a severally liable party to pay an uncollectible portion of another tortfeasor's damages. Both subdivision 1 and subdivision 2 of section 604.02 are relevant to our resolution of this issue. Subdivision 1 provides:

> When two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that the following persons are jointly and severally liable for the whole award:
>
> (1)     a person whose fault is greater than 50 percent;
>
> (2)     two or more persons who act in a common scheme or plan that results in injury;
>
> (3)     a person who commits an intentional tort; or
>
> (4)     a person whose liability arises under [one of several

4

environmental or public health laws].[2]

Minn. Stat. § 604.02, subd. 1.  Subdivision 2, in turn, provides:

> Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault.  A party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Minn. Stat. § 604.02, subd. 2.

The Diocese argues that the district court erred by reallocating Richard Staab's equitable share of damages to the Diocese under subdivision 2 because applying subdivision 2 to parties who are severally liable under subdivision 1 is contrary to the definition of several liability and eviscerates our holding in *Staab I*.  Staab counters that reallocation was proper because nothing in subdivision 2 limits its application to parties who are jointly and severally liable under subdivision 1.

---

[2]    The concepts of several liability and joint and several liability are relevant when the concurrent conduct of multiple tortfeasors produces a single, indivisible injury.  *See Staab I*, 813 N.W.2d at 74.  As used in Minn. Stat. § 604.02, subd. 1, a person who is "severally liable" has "liability that is separate and distinct from another's liability, so that the plaintiff may bring a separate action against one defendant without joining the other liable parties."  *Staab I*, 813 N.W.2d at 74-75 (citation omitted).  "[A] 'severally liable' defendant is responsible for only his or her equitable share of the [damages] award."  *Id.* at 74.  As used in Minn. Stat. § 604.02, subd. 1, a person who is "jointly and severally liable" also has liability that is separate and distinct from another's liability, so that the plaintiff may bring an action against one defendant without joining the other liable parties.  *Staab I*, 813 N.W.2d at 74-75.  But unlike a severally liable defendant, "a 'jointly and severally liable' defendant is responsible for the entire [damages] award."  *Id.* at 74.

Whether the district court properly reallocated Richard Staab's equitable share of damages to the Diocese under Minn. Stat. § 604.02, subd. 2, is a question of statutory interpretation. Statutory interpretation presents a question of law, which we review de novo. *White v. City of Elk River*, 840 N.W.2d 43, 52 (Minn. 2013). The goal of statutory interpretation is to effectuate the intent of the Legislature. *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010); *accord* Minn. Stat. § 645.16 (2012). If the Legislature's intent is clear from the unambiguous language of the statute, we apply the statute according to its plain meaning. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). Judicial construction of a statute becomes part of the statute as though it were written therein. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012). But if a statute is susceptible to more than one reasonable interpretation, the statute is ambiguous, and we will consider other factors to ascertain the Legislature's intent. *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006).

A.

We first consider whether Minn. Stat. § 604.02, subd. 2, is ambiguous as to its application to severally liable parties. Subdivision 2 requires the district court to "determine whether all or part of a party's equitable share of the obligation is uncollectible from that party" and to "reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault." The term "party" in subdivision 2 "means all persons who are parties to the tort, regardless of whether they are named in the lawsuit." *Staab I*, 813 N.W.2d at 76; *accord Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289, 293 (Minn. 1986). A

6

tortfeasor's liability "arises and exists independently of the tortfeasor's participation in a lawsuit and, therefore, is independent of the tortfeasor's obligation to contribute to any judgment entered in such a lawsuit." *Staab I*, 813 N.W.2d at 76.

One reasonable interpretation of subdivision 2, which is advanced by Staab, is that severally liable parties are subject to reallocation. The text of subdivision 2 indicates that any party is subject to reallocation. Because the term "party" includes all parties to the tort, it is reasonable to interpret the phrase "a party's equitable share of the obligation" as referring to the amount of damages attributable to another person's negligence, even if that person is not a party to the lawsuit. The language of subdivision 2 also is mandatory—once the district court has determined that some portion of the damages attributable to a party to the tort is uncollectible, the district court "*shall* reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault." Minn. Stat. § 604.02, subd. 2 (emphasis added). The Legislature could have provided an express exception to subdivision 2 for parties who are severally liable under subdivision 1, but it did not to do so.[3]

---

[3]     The dissent contends that our analysis should end here because this straightforward reading of subdivision 2 is reasonable. But "[t]he first step in statutory interpretation is to 'determine whether the statute's language, on its face, is ambiguous.' " *500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 290 (Minn. 2013) (quoting *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010)). Therefore, we do not stop merely because we can identify one reasonable interpretation. Rather, we must consider whether there are other reasonable interpretations to which the statute is susceptible. *See id.* (stating that a statute is ambiguous if it "is susceptible to more than one reasonable interpretation").

The dissent's view that the reallocation provision in subdivision 2 should apply to a severally liable defendant also ignores our principle that, when we construe a statute, we read the statute as a whole and give effect to all statutory provisions. *City of Saint*

(Footnote continued on next page.)

7

Another reasonable interpretation of subdivision 2, which is advanced by the Diocese, is that damages cannot be reallocated to parties who are only severally liable under subdivision 1. Subdivision 2 must be read in conjunction with subdivision 1. *See A.A.A. v. Minn. Dep't of Human Servs.*, 832 N.W.2d 816, 819 (Minn. 2013) (explaining that this court examines the language of the statute as a whole when interpreting a statute); *accord* Minn. Stat. § 645.16. As we observed previously, subdivision 1 provides that "[w]hen two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that" parties in four specific categories "are jointly and severally liable for the whole award." Minn. Stat. § 604.02, subd. 1. Subdivision 1, like subdivision 2, uses mandatory language, stating that the contributions of a severally liable party "*shall be* in proportion to the percentage of fault attributable to each." *Id.* (emphasis added).

In *Staab I,* we concluded that the effect of subdivision 1 is to limit the "magnitude of a severally liable person's contribution to an amount that is in proportion to his or her percentage of fault, as determined by the jury." 813 N.W.2d at 75. A severally liable party "is responsible for only his or her equitable share" of a damages award, even if the plaintiff chooses to sue fewer than all tortfeasors who caused the harm. *Id.* Reallocation of another party's share of damages to a severally liable party would necessarily require the severally liable party to contribute to the award in excess of the severally liable

(Footnote continued from previous page.)
*Paul v. Eldredge*, 800 N.W.2d 643, 648 (Minn. 2011). As addressed below, reading subdivision 2 in the manner proposed by Staab and the dissent would render the Legislature's most recent amendments to subdivision 1 ineffective.

party's equitable share of the damages—a circumstance that is contrary to the plain meaning of subdivision 1 and several liability. Because subdivision 2 is subject to more than one reasonable interpretation, we conclude it is ambiguous regarding whether it applies to severally liable parties.

B.

Having concluded that Minn. Stat. § 604.02, subd. 2, is ambiguous, we next consider sources in addition to the plain text to ascertain the Legislature's intent. *See Rick*, 835 N.W.2d at 485. "When a statutory provision is ambiguous, it is appropriate to turn to the canons of statutory construction to ascertain a statute's meaning." *State v. Leathers*, 799 N.W.2d 606, 611 (Minn. 2011). To determine legislative intent, we also may "consider the legislative history of the act under consideration, the subject matter as a whole, the purpose of the legislation, and objects intended to be secured thereby." *Sevcik v. Comm'r of Taxation*, 257 Minn. 92, 103, 100 N.W.2d 678, 686-87 (1959); *see also* Minn. Stat. § 645.16(1)-(8) (2012).

Our canons of statutory construction support the conclusion that section 604.02, subdivision 2, does not authorize reallocation of another party's equitable share of damages to a party who is only severally liable under section 604.02, subdivision 1. Interpreting subdivision 2 to permit reallocation of an uncollectible share to a severally liable defendant would violate the principle that a statute must be construed in a manner that gives effect to each of its provisions. *See Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000); *accord* Minn. Stat. § 645.17(2) (2012). The clause in subdivision 1 that reads "contributions to awards shall be in proportion to the percentage

9

of fault attributable to each" would be rendered "ineffective . . . if a severally liable person were compelled to contribute out of proportion to his or her percentage of fault." *Staab I*, 813 N.W.2d at 76.

Permitting reallocation to a severally liable party under subdivision 2 also would be inconsistent with the canon of statutory construction "expressio unius est exclusio alterius"—the expression of one thing is the exclusion of another. *See In re Welfare of J.B.*, 782 N.W.2d 535, 543 (Minn. 2010); *accord* Minn. Stat. § 645.19 (2012). The current text of subdivision 1 was enacted in 2003. Act of May 19, 2003, ch. 71, § 1, 2003 Minn. Laws 386, 386 (codified at Minn. Stat. § 604.02, subd. 1 (2012)). By adopting this amendment, the Legislature "inten[ded] to limit joint and several liability to the four circumstances enumerated in the exception clause, and to apply the rule of several liability in all other circumstances." *Staab I*, 813 N.W.2d at 78. The fact that one liable party is insolvent or cannot be collected from for other reasons is not one of the four exceptions in subdivision 1 to which joint and several liability still applies. Yet that would be the practical effect of permitting reallocation to severally liable parties under subdivision 2. The Legislature's expression of a general rule of several liability subject to four exceptions in subdivision 1 precludes an interpretation of subdivision 2 that would effectively create a fifth exception to the several liability rule.

Our conclusion that a defendant who is severally liable under subdivision 1 is not required to pay more than the defendant's equitable share of the damages under the reallocation provision of subdivision 2 finds additional support in the legislative history of section 604.02. Under Minnesota common law, parties whose concurrent negligence

10

caused injury were jointly and severally liable for the resulting damages. *See Maday v. Yellow Taxi Co. of Minneapolis*, 311 N.W.2d 849, 850 (Minn. 1981). This legal standard prevailed until the Legislature began to place limitations on the rule. *Id.*; *see also* Michael K. Steenson, *Joint and Several Liability Minnesota Style*, 15 Wm. Mitchell L. Rev. 969, 970-72 (1989). The Legislature's history of enacting and amending Minn. Stat. § 604.02 indicates its intent to limit the application of joint and several liability.

In 1969, the Legislature codified a comparative negligence scheme that did not abolish joint and several liability. Act of May 23, 1969, ch. 624, § 1, 1969 Minn. Laws 1069, 1069 (codified as amended at Minn. Stat. § 604.01, subd. 1 (2012)). In 1978, the Legislature enacted Minn. Stat. § 604.02. Act of Apr. 5, 1978, ch. 738, § 8, 1978 Minn. Laws 836, 840 (codified as amended at Minn. Stat. § 604.02 (2012)). When it did so, it moved the statutory language regarding joint and several liability into subdivision 1 of section 604.02, which at the time read, "When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award." Minn. Stat. § 604.02, subd. 1 (1978). At the same time, the Legislature enacted the reallocation-of-damages provision in subdivision 2, which remains unchanged today. Act of Apr. 5, 1978, ch. 738, § 8, 1978 Minn. Laws 836, 840 (codified at Minn. Stat. § 604.02, subd. 2 (2012)).

Thus, when subdivision 2 was enacted, it was a mechanism to limit the amount of damages that a jointly liable defendant could be required to pay. "Specifically, after the 1978 amendments to chapter 604, parties against whom judgment had been entered no

11

longer were jointly and severally liable for the entire judgment if another party's share of the judgment proved to be uncollectible." *Staab I*, 813 N.W.2d at 77. Instead, a jointly liable defendant could petition the district court to reallocate an uncollectible portion of damages among all potentially liable parties, including the plaintiff.[4] Steenson, *Joint and Several Liability Minnesota Style*, *supra*, at 976.

While subdivision 2 remains unchanged since its original enactment, subdivision 1 has been amended several times to place further limitations on joint and several liability. The 1986 amendment capped liability for jointly and severally liable states and municipalities that were less than 35 percent at fault. *See* Act of Mar. 25, 1986, ch. 455, § 85, 1986 Minn. Laws 840, 882 (codified as amended at Minn. Stat. § 604.02, subd. 1 (2012)). The 1988 amendment, in part, capped damages for jointly and severally persons whose fault was 15 percent or less, except for those who were found liable under certain environmental statutes. *See* Act of Apr. 12, 1988, ch. 503, § 3, 1988 Minn. Laws 375, 378 (codified as amended at Minn. Stat. § 604.02, subd. 1 (2012)). Minnesota Statutes

---

[4]    An example illustrates how the 1978 enactment of subdivision 2 limited the amount of damages a jointly liable defendant could be required to pay. Suppose that in a lawsuit against two defendants, a jury found that the plaintiff had $10,000 in damages and apportioned 10 percent of the fault to Plaintiff, 10 percent to Defendant A, and 80 percent to Defendant B. If Defendant B could not pay its share of the judgment, unmodified joint and several liability rules would have required Defendant A to pay 90 percent of the plaintiff's damages, or $9,000. Steenson, *Joint and Several Liability Minnesota Style*, *supra*, at 976-77. Under subdivision 2, however, a district court must reallocate the uncollectible amount ($8,000) between Defendant A and Plaintiff according to their respective percentages of fault. Because Defendant A and Plaintiff were equally at fault, the uncollectible amount would be reallocated in equal shares, resulting in Defendant A paying only $5,000 (10 percent of the plaintiff's damages for Defendant A's fault plus 50 percent of the uncollectible amount). *Id.*

§ 604.02 remained substantially unchanged for fifteen years until the Legislature amended subdivision 1 again in 2003. *See* Act of May 19, 2003, ch. 71, § 1, 2003 Minn. Laws 386, 386 (codified at Minn. Stat. § 604.02, subd. 1 (2012)). The 2003 amendments are significant here because they made several liability, as opposed to joint and several liability, the general rule, subject to four exceptions.[5] *Id.* With each amendment of the statute over the course of 25 years, the Legislature further curtailed joint and several liability in Minnesota.

Finally, the Legislature's formal discussions of the 2003 amendment demonstrate an intent consistent with our construction of the statute. For example, during both the House and Senate floor debates of the proposed changes to joint and several liability, legislators urged their colleagues to vote in favor of the bill by emphasizing the importance of making Minnesota's tort system fair by requiring people and companies to pay for the harm they cause but not for harm caused by others. *See, e.g.*, *Sen. Debate on S.F. 872*, 83d Minn. Leg., May 13, 2003 (video tape) (statement of Sen. Linda Scheid, author of S.F. 872); *House Debate on S.F. 872*, 83d Minn. Leg., May 13, 2003 (video tape) (statement of Rep. Jeff Johnson). These arguments were countered by a dissenting

---

[5]     By enacting the 2003 amendment to subdivision 1, the Legislature clearly intended to abrogate the common law rule of joint and several liability for tortfeasors whose concurrent negligence causes an indivisible injury to a plaintiff. *See Staab I*, 813 N.W.2d at 78. ("[W]e conclude that the 2003 amendments to the statute clearly indicate the Legislature's intent to limit joint and several liability to the four circumstances enumerated in the exception clause, and to apply the rule of several liability in all other circumstances."). Contrary to the dissent's claims, our conclusion in this case is neither contrary to our case law regarding the interpretation of statutes in derogation of the common law, nor is it inconsistent with our holding in *Staab I*.

representative who urged his colleagues to vote against the proposed changes to joint and several liability because the proposed changes would create instances in which victims would not receive full compensation for their injuries. *House Debate on S.F. 872*, 83d Minn. Leg., May 13, 2003 (video tape) (statement of Rep. Len Francis Biernat). Despite these warnings on the House floor about the consequences for injured victims, the bill passed. *See, e.g.*, *id.* Allowing uncollectible damages attributable to the fault of one party to be reallocated to a severally liable party would be contrary to the clear purpose of the 2003 amendment—requiring severally liable parties in the Minnesota tort system to pay only for the harm caused by their own conduct and not for the harm caused by others.

Our canons of statutory construction, the legislative history, and the purpose of Minn. Stat. § 604.02 support our analysis and preclude the application of the reallocation-of-damages provision to severally liable parties. We, therefore, conclude that under Minn. Stat. § 604.02, subd. 2, an uncollectible portion of a party's equitable share of damages cannot be reallocated to a party that is only severally liable under Minn. Stat. § 604.02, subd. 1.

III.

The dissent's criticism of our analysis is flawed for two reasons, which we address in turn. First, the dissent contends that our decision conflicts with long-standing case law on how we interpret amendments to a subdivision of a statute. The dissent is misguided. The standards for statutory construction that we employ are well grounded in our case law. We respectfully decline the dissent's invitation to discard or ignore them.

14

The dissent claims that because the Legislature amended only subdivision 1 in 2003, this significant statutory change that made several liability the general rule in Minnesota has no impact on the reallocation provisions in subdivision 2 without "words showing an intent to amend" subdivision 2. But the dissent errs by reading the cases it cites too broadly. For example, the dissent cites *Sorseleil v. Red Lake Falls Milling Co.*, 111 Minn. 275, 276, 126 N.W. 903, 904 (1910), which involved the interpretation of a statute defining when a juror could be challenged for implied bias. In *Sorseleil*, we explained that two subdivisions of the statute, each defining a ground for finding implied bias, were "complete in [them]sel[ves]," "sustain[ed] no relation" to the other, and were "in no manner interdependent." *Id.* at 278, 126 N.W. at 904. Under those circumstances—which are not present here—we held that "the amendment of the one does not amend the other, in the absence of any words in the amendment to that effect." *Id*. at 278, 126 N.W. at 904. Here, unlike the statute at issue in *Sorseleil*, the subdivisions of section 604.02 are not complete in themselves. They have a relationship with each other.

Second, the dissent contends that because the Legislature did not expressly limit the application of subdivision 2 to jointly and severally liable parties, our interpretation of section 604.02 violates our rule against adding to a statute words that were intentionally or inadvertently omitted by the Legislature. But the application of that rule is inapposite where, as here, the language of the statute is ambiguous. Rather, our prohibition against adding words to a statute applies when an *unambiguous* statute is silent on the issue in question. *See State v. Moseng*, 254 Minn. 263, 269, 95 N.W.2d 6, 11-12 (1959) ("Where

15

failure of expression rather than ambiguity of expression concerning the elements of the statutory standard is the vice of the enactment, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature."). Here, the conflict between subdivision 1 and subdivision 2 does not arise because subdivision 2 is silent regarding its application to severally liable parties. Rather, the conflict between subdivision 1 and subdivision 2 arises because the application of subdivision 2 to severally liable parties would completely eviscerate the Legislature's amendment to subdivision 1.

Our task here is to effectuate the intent of the Legislature. The dissent apparently disagrees with the Legislature's decision to curtail joint and several liability in Minnesota. But the Legislature—not the courts—remains the appropriate venue to revisit this genuine policy debate.

IV.

For the foregoing reasons, we hold that a party who is severally liable under Minn. Stat. § 604.02, subd. 1, cannot be ordered to contribute more than that party's equitable share of the total damages award under the reallocation-of-damages provision in Minn. Stat. § 604.02, subd. 2.[6] The district court erred by reallocating to the Diocese the share

---

[6] Because we conclude that damages cannot be reallocated to a severally liable party under Minn. Stat. § 604.02, subd. 2, we need not consider the second issue raised by the Diocese—whether damages must be reduced to a judgment before being reallocated under Minn. Stat. § 604.02, subd. 2. *See State v. Castillo-Alvarez*, 836 N.W.2d 527, 534 n.3 (Minn. 2013).

16

of damages attributed to Staab's husband. We, therefore, reverse the court of appeals and remand to the district court for entry of judgment consistent with this opinion.

Reversed and remanded.

DISSENT

LILLEHAUG, Justice (dissenting).

Today a blameless plaintiff, who was thrown out of her wheelchair onto a cement sidewalk, is denied a remedy for half of the damages she suffered. Today the solvent tortfeasor, whose negligence caused the plaintiff to be thrown onto the cement sidewalk, benefits. This result violates the plain words of the law, judicially amends what the Legislature did not, and ignores our long-standing rule that statutes in derogation of the common law must be strictly construed. So I respectfully dissent.

I.

Minnesota has followed the common law rule of joint and several liability since at least 1888. *See Flaherty v. Minneapolis & St. Louis Ry. Co.*, 39 Minn. 328, 329, 40 N.W. 160, 160-61 (1888); *Virtue v. Creamery Package Mfg. Co.*, 123 Minn. 17, 39, 142 N.W. 930, 939 (1913). In 1969, the Legislature modified the common law by adopting Minn. Stat. § 604.01, the comparative fault law.

In 1978, the Legislature again modified the common law by passing Minn. Stat. § 604.02. *Staab v. Diocese of St. Cloud* (*Staab II*), 813 N.W.2d 68, 73 (Minn. 2012).[1] Section 604.02 as passed consisted of three subdivisions.

Subdivision 1 initially provided that jointly and severally liable persons must contribute "in proportion to" their percentage of fault, while remaining "liable for the

---

[1] *Staab I* was the first court of appeals decision in this case, 780 N.W.2d 392 (Minn. App. 2010). *Staab II* was this court's decision affirming and modifying *Staab I*. *Staab III* was the court of appeals decision after subsequent proceedings, 830 N.W.2d 40 (Minn. App. 2013), which the court reverses today in what will be known as *Staab IV*.

whole award." Minn. Stat. § 604.02, subd. 1 (1978). Since 1978, subdivision 1 has been amended repeatedly. The most recent amendment was in 2003, when the Legislature limited the ability of plaintiffs to collect their full awards immediately from tortfeasors whose percentage of fault is less than 51 percent. *See* Act of May 19, 2003, ch. 71 § 1, 2003 Minn. Laws 386, 386 (codified at Minn. Stat. § 604.02, subd. 1 (2012)). Subdivision 1 now provides that, with four exceptions not applicable here, "[w]hen two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each." Minn. Stat. § 604.02, subd. 1 (2012).

The 2003 Legislature passed the amendment of subdivision 1 against the backdrop of subdivisions 2 and 3, also passed in 1978. The 2003 Legislature kept subdivisions 2 and 3 intact.

Subdivision 2, captioned "Reallocation of uncollectible amounts generally," applies to cases in which "respective percentages of fault" have been determined and judgment has been entered. Minn. Stat. § 604.02, subd. 2. In such cases, upon motion within a year of judgment, "the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution . . . ." *Id.*

Subdivision 3, too, deals with reallocation, carving out an exception to the general reallocation provisions of subdivision 2. Captioned "Product liability; reallocation of uncollectible amounts," subdivision 3 contains specific rules for reallocation of

uncollectible amounts among persons in the chain of manufacture and distribution of a product. Minn. Stat. § 604.02, subd. 3.

## II.

The question in this case, in which "respective percentages of fault" have been determined and judgment has been entered, is whether, as Alice Staab contends and the district court and the court of appeals held, subdivision 2 must be applied as written, requiring reallocation to the solvent tortfeasor of the insolvent tortfeasor's uncollectible equitable share based on their respective percentages of fault. The Diocese of St. Cloud (the Diocese) contends that the 2003 amendment to subdivision 1 also silently amended subdivision 2, thereby prohibiting reallocation except in the four exceptional categories of cases referenced in subdivision 1.

In answering this question, we do not write on a blank slate. In *Staab II,* this court interpreted subdivision 1 to limit the contribution of a tortfeasor to an award in favor of the injured, non-negligent claimant. 813 N.W.2d at 80. *Staab II* held that the Diocese, the only named defendant in the case, need contribute only 50 percent of the award in light of the jury's attribution of the other 50 percent of the fault to a non-party "empty chair": Alice Staab's husband, Richard. *Id.*

In interpreting subdivision 1, *Staab II* relied heavily on our long-standing rule that statutes in derogation of the common law are strictly construed and on the common law doctrine that liability and equitable shares are created at the moment a tort is committed. *Id*. at 73-74. Applying these principles, *Staab II* held that the contribution limitation in

subdivision 1 applies when more than one tortfeasor acts to cause an indivisible harm to a claimant, regardless of how many tortfeasors are named in a lawsuit. *Id*. at 77.

Three justices dissented. They noted that the majority had defined the word "persons" in subdivision 1 and the word "parties" in subdivision 2 to mean the same thing: all persons who are parties to the tort, regardless of whether they are named in the lawsuit. *Id*. at 84-85 (Meyer, J., dissenting). Based on that definition, the dissenters predicted that the majority opinion in *Staab II* would "effectively obligate the Diocese to pay the entire award anyway" after reallocation under subdivision 2.[2] 813 N.W.2d at 85.

The *Staab II* dissenters' prediction that the *Staab II* majority would follow its own logic was, unfortunately, incorrect. The majority today both misreads subdivision 2 and declines to apply the principles underlying *Staab II*, including the rule that statutes in derogation of the common law must be strictly construed.

## III.

I first consider whether the words of the law are clear, unambiguous, and explicit. Minn. Stat. § 645.16 (2012). If so, I must "apply the statute's plain meaning." *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010) (citation omitted) (internal quotation marks omitted).

In this case, the words of the law "in their application to an existing situation are clear and free from all ambiguity." Minn. Stat. § 645.16. Under subdivision 2, we must

---

[2]    In response, the *Staab II* majority said only: "The application of subdivision 2 to this case is not before us, however, and therefore we do not reach it." *Staab II*, 813 N.W.2d at 79 n.7.

first identify the tortfeasor "parties." Then we must identify each party's "equitable share of the obligation" by each party's "respective percentages of fault." Then we must determine whether a motion for reallocation has been made not later than one year after judgment. Finally, we must determine if a party's equitable share is uncollectible. If so, the plain words of subdivision 2 require that the district court "shall reallocate" the uncollectible amount.

Applying the plain words of the statute, as confirmed by *Staab II*, both the Diocese and Richard Staab were tortfeasor "parties." Alice Staab sustained indivisible harm from the parties' actions. The jury determined each party's "equitable share of the obligation" by allocating "respective percentages of fault." A motion for reallocation was made no later than one year after judgment. Richard Staab's equitable share was uncollectible. Therefore, the text of subdivision 2 clearly and unambiguously required that the district court reallocate Richard Staab's uncollectible amount to the Diocese.

The majority acknowledges that this straightforward reading of subdivision 2 is reasonable. As the majority concedes, "*[t]he text of subdivision 2 indicates that any party is subject to reallocation.*" (Emphasis added.) That concession regarding the plain meaning of the text should end the discussion.

But, says the majority, it is also reasonable to read the 2003 amendment to subdivision 1 as silently amending subdivision 2, thereby making subdivision 2 ambiguous. Oddly, the majority points to no ambiguous words or phrases in either subdivision 1 or subdivision 2. It cites no alternative dictionary definitions. Rather, the majority's theory seems to be that subdivision 2 *as a whole* must be ambiguous because,

if it were read and applied literally, subdivision 2 would "completely eviscerate[]"what the majority surmises the 2003 Legislature intended in subdivision 1. The majority's analysis turns statutory interpretation on its head by using the purported legislative spirit behind one subdivision to create a cloud of ambiguity over another subdivision. *See* Minn. Stat. § 645.16 ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). The proper method of analysis is to determine first whether there is ambiguity in the statute's text and, if so, then and only then apply the canons of construction, including contemporaneous legislative history. *Id.*

Thus, the majority eschews the plain words and uses a questionable method of statutory analysis. But the majority's reading of subdivision 2 is unreasonable for four other reasons.

First, the majority opinion conflicts with our black-letter case law on how we read subdivision amendments. By the majority's reasoning, Minnesota courts must now read subdivision 2 differently than they did from 1978 until today's decision. But our rule is that, when one subdivision of a statute is amended and another is not, unless there are words showing an intent to amend, "the second subdivision means just what it meant before the first subdivision was amended . . . ." *Sorseleil v. Red Lake Falls Milling Co.*, 111 Minn. 275, 278, 126 N.W. 903, 904 (1910). Such intent to amend must be clear, as we do not favor amendment by implication. We assume that, if the Legislature deliberately intends to amend a subdivision, it will do so directly and not leave it to inference. *Brown v. Vill. of Heron Lake,* 67 Minn. 146, 147, 69 N.W. 710, 710 (1897);

*see also* Minn. Stat. § 645.39 (2012) (providing that "a later law shall not be construed to repeal an earlier law unless the two laws are irreconcilable" or the later law "purports to be a revision of all laws upon a particular subject"). Typically, "continuity of text equals continuity of meaning." *In re Towers*, 162 F.3d 952, 954 (7th Cir. 1998).

Second, and in a related vein, the majority opinion conflicts with our rule that we do not, and cannot, add to a statute words or meaning intentionally or inadvertently omitted by the Legislature. *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012); *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001). It would have been easy for the Legislature to say what the majority now divines it must have meant to say. As the majority opinion correctly notes, "[t]he Legislature could have provided an express exception to subdivision 2 for parties who are severally liable under subdivision 1, but it did not do so." When it amended subdivision 1, the Legislature could have said, for example: "contributions to awards shall be in proportion to the percentage of fault attributable to each *regardless of collectibility*." But it did not. Or the Legislature could have amended subdivision 2 to read: "Upon motion made not later than one year after judgment is entered *in a joint liability case under subdivision 1*." But it did not. Or: "the court shall determine whether all or part of a party's equitable share of the obligation *under subdivision 1* is uncollectible." But it did not.

By contrast, subdivision 3 of the same statute, passed at the same time as subdivision 2, demonstrates beyond doubt that, when the Legislature wants to limit reallocation of uncollectible amounts, it very well knows how to do so. Subdivision 3 states: "Provided, however, that a person whose fault is less than that of a claimant is

liable to the claimant only for that portion of the judgment which represents the percentage of fault attributable to the person whose fault is less." There is nothing like that in subdivision 2.

To justify what is essentially the judicial addition of words to subdivision 2, the majority falls back on "expressio unius," the canon that "[e]xceptions expressed in a law shall be construed to exclude all others," Minn. Stat. § 645.19 (2012). The majority theorizes that the four joint liability exceptions in subdivision 1 thereby exclude reallocation under subdivision 2. But expressio unius must be used with great caution,[3] and "is only justified when the language of the statute supports such an inference," *State v. Caldwell,* 803 N.W.2d 373, 383 (Minn. 2011).

There is no such justification in this case. Subdivision 1 speaks in terms of "contributions to awards," while subdivision 2 speaks in terms of "a party's equitable share of the obligation." Subdivisions 1 and 2 may be read together, straightforwardly and logically, and harmonized. Under subdivision 1, a tortfeasor need not contribute more to the award than its percentage of fault if there is another solvent tortfeasor; and,

---

[3]    *See Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 703-04 (1991) ("[T]he principle *expressio unius est exclusio alterius* is a questionable one in light of the dubious reliability of inferring specific intent from silence.") (citation omitted) (internal quotation marks omitted); *Ford v. United States*, 273 U.S. 593, 612 (1927) (describing the maxim as "a dangerous master to follow") (citation omitted) (internal quotation marks omitted); *Christianson v. Henke*, 831 N.W.2d 532, 535 n.3 (Minn. 2013) ("Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context." (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012))).

under subdivision 2, only upon motion and a determination of insolvency may a tortfeasor be required to pay more, while maintaining its claim for contribution.

Third, while purporting to read subdivisions 1 and 2 together, the majority opinion conflicts with the rule that a statute must be read in a manner that gives effect to each and all of its provisions. *See* Minn. Stat. § 645.16. This means that we must read together and harmonize not only subdivisions 1 and 2, but also subdivision 3, which was part of the original section 604.02 and remains intact. *See* Minn. Stat. § 645.31, subd. 1 (2012) ("When a section or part of a law is amended . . . the *remainder of the original enactment and the amendment shall be read together* . . . .") (emphasis added). Had the 2003 amendment to subdivision 1 silently amended subdivision 2 (by expressio unius or otherwise) to limit reallocation to the four joint liability exceptions in subdivision 1, then, logically, we would have to read subdivision 3, passed at the same time as subdivision 2, as similarly amended and so limited. Put another way, by the majority's analysis, subdivision 1 would require that, in a product liability case, reallocation of an insolvent party's percentage of an award would be triggered only if the products liability case first fit within one of the four joint liability exceptions in subdivision 1.

But to read subdivisions 1, 2, and 3 together in that way would make no sense. Like subdivision 2, subdivision 3 continues to stand on its own. Just as subdivision 2 clearly applies "generally" to all multi-party tort cases in which percentages of fault are found, so, too, does subdivision 3 apply to all product liability cases in which multiple parties in the chain of manufacture and distribution are at fault. Indeed, subdivision 3

expressly provides for reallocation to parties whose negligence is less than 50 percent. This is another signal that we should read subdivision 2 as written.

Fourth, the majority's holding that subdivision 1 tacitly amended subdivision 2 conflicts with yet another basic presumption of statutory interpretation: that statutes in derogation of common law must be strictly construed.[4] This presumption occupied center stage in *Staab II*.[5] As *Staab II* held, when interpreting section 604.02, we should not presume that the Legislature intended to abrogate or modify a common law rule except to the extent "expressly declared or clearly indicated in the statute." 813 N.W.2d at 73; *see also Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000) ("We have . . . long presumed that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication.").

There is no such express wording or necessary implication here. By reading subdivision 1 to amend unamended subdivision 2, the majority sidesteps this important presumption applied previously in this case and in many others. The concept that a plaintiff who has suffered an indivisible injury cannot ever recover the insolvent

---

[4]    The presumption that we strictly construe statutes in derogation of the common law typically is applied before we determine whether a statute is ambiguous. *See, e.g.*, *Dahlin v. Kroening*, 796 N.W.2d 503, 505 (Minn. 2011); *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 377 (Minn. 1990).

[5]    *Staab II* invoked the common law to define the word "party" in subdivision 2 to mean any party to the tort, regardless of whether that person is a party to the lawsuit. 813 N.W.2d at 77. *Staab II* further invoked the common law to define the phrase "equitable share of the obligation" in subdivision 2 to mean the equitable shares apportioned to each tortfeasor at the time of the tort. *Id*.

tortfeasor's share, in preference to a solvent tortfeasor, is an abrogation of the common law. If the Legislature intended such abrogation, it had to say so clearly. It did not.[6]

Accordingly, the words of subdivision 2 in their application are clear and free from all ambiguity. Subdivision 2 meant what it said when it was enacted in 1978 and should mean the same now.

So, on what does the majority rely to show that the 2003 Legislature intended to amend subdivision 2 without changing a single word? Precious little. The majority relies primarily on several statements during the 2003 floor debates. But the legislators' statements (on both sides of the question) were general and did not directly address how the specific words of the amendment to subdivision 1 would or would not amend the unchanged words of subdivision 2, governing reallocation of uncollectible amounts generally, or subdivision 3, governing reallocation of uncollectible amounts in product liability cases. As counsel for the Diocese confirmed at oral argument: "But to directly answer your question, I don't believe there is anything, I'll say, of significance in the legislative history in 2003 relative to subdivision 2."

IV.

By its order dated August 8, 2012, the district court faithfully applied the plain words of subdivision 2 to this case. Under subdivision 1, Alice Staab initially could collect only 50 percent of her award from the Diocese. She timely made her motion for

---

[6]     By requiring that a judgment creditor make a motion and obtain a determination that an equitable share is uncollectible, subdivision 2 itself is a departure from the common law of collection in multi-party tort cases.

reallocation, thereby triggering subdivision 2. Subdivision 2 required that, upon such motion, the district court determine whether Richard Staab's equitable share of the obligation was uncollectible. The district court determined that it was.

Properly and logically, applying subdivision 2, the district court reallocated Richard Staab's uncollectible share to the only other party at fault, the Diocese. Pursuant to subdivision 2, that reallocation did not extinguish Richard Staab's equitable share of the obligation and the Diocese retained its right to contribution from him. The district court followed subdivision 2 exactly.

The court of appeals,[7] in *Staab III*, also faithfully applied what it called the "plain language" of subdivision 2. 830 N.W.2d at 46-47. This was not the first court of appeals panel to read the clear, unambiguous words of subdivision 2 as requiring reallocation from an insolvent tortfeasor to a solvent, severally liable tortfeasor. In *O'Brien v. Dombeck*, also decided after *Staab II*, a unanimous panel, affirming the district court, held that the "plain text" of subdivision 2 required such reallocation. 823 N.W.2d 895, 899 (Minn. App. 2012).[8]

Unlike the panels and judges below who read the plain words of subdivision 2 with clear eyes, as illuminated by *Staab II*, today's majority holds that the injured person must absorb half of her damages from the tort. Like the panels and judges below, my

---

[7] The decision was 2-1. The dissent was on a ground not reached by the majority in this case.

[8] The solvent tortfeasor in *O'Brien* did not petition this court for review.

D-12

dissent to this holding is not based on a policy preference, but on the plain text of the statute read against the backdrop of 125 years of Minnesota common law.

V.

Given that reallocation under subdivision 2 was proper, I would reach and reject the Diocese's alternative argument that, under subdivision 2, Richard Staab's equitable share was not uncollectible, and reallocation could not be ordered, because there was no "judgment" against Richard Staab. Again, the Diocese seeks to benefit from its own strategic litigation decision not to bring in Richard Staab as a third-party defendant but to pass off as much fault as possible to an empty chair. Again, the Diocese's argument is foreclosed by the plain words of the statute and the reasoning of *Staab II*.

Subdivision 2 does not use the word "judgment"; it uses the phrase "equitable share of the obligation." As *Staab II* confirmed, the term "obligation" is different (and broader) than "judgment." 813 N.W.2d at 76.

In this case, there was no judgment against Richard Staab because the Diocese preferred to have an empty chair's "respective percentage of fault" and "equitable share of the obligation" determined by the jury. As required by subdivision 2, the district court properly held a hearing on whether Richard Staab could pay and concluded that he could not. The record does not show, and the Diocese does not demonstrate, that the district court's finding that Richard Staab's equitable share was uncollectible is incorrect, much less clearly erroneous. *See State v. R.H.B.*, 821 N.W.2d 817, 822 n.3 (Minn. 2012) ("A district court's findings of fact will not be disturbed unless they are clearly erroneous.").

## VI.

For all of these reasons, the blameless plaintiff should not bear 50 percent of her loss while a solvent tortfeasor escapes reallocation. The court of appeals decision, affirming the decision of the district court, should be affirmed.

One of the pillars in our state constitution's bill of rights is the guarantee that every person is entitled to a "certain remedy" for injuries with the right to "obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws." Minn. Const. art. I, § 8. Today's decision chisels a chunk from that pillar.


PAGE, Justice (dissenting).

I join in the dissent of Justice Lillehaug.